## EBER PINKHAM v. HARVEY COCKELL.

*Bills and notes—Special payee—Proof of handwriting—Notice required of taking depositions—Notaries public—Evidence—Admission of letters.*

1. The provision of How. Stat. § 7463, that where the distance exceeds 240 miles 20 days' notice shall be sufficient of the taking of depositions, was not meant to enlarge the time, in any case, beyond the period of one week-day for each 20 miles, but to fix a maximum which should suffice for distances beyond 240 miles.

2. The presumption, according to the general custom, is that a notary public can administer oaths.

   So *held*, where a deposition was taken in another state, to which was attached the certificate of the proper officer that the person before whom the deposition was taken was a notary public of said county, duly commissioned and sworn, and that his acts as such were entitled to credit.

3. It is certainly legal and proper for a person to appoint a special payee of funds in his own interest, and there may be contract or other relations calling for it.

4. Where one or more letters, purporting to come from a certain person, are recognized by him in subsequent transactions, that may, in some cases, be admissible on questions of handwriting. But the mere receipt of letters purporting to be from a person never seen, and with whom no subsequent relations existed which were based on them as genuine, has no value as means of knowledge.

5. Where there is no direct knowledge of handwriting, there must be something which assures the recipient of letters, in a responsible way, of their genuineness, before he can swear to their writer, or use them as comparisons of handwriting.

   So *held*, where a witness called to prove an indorsement on a note, testified that he never saw the purported indorser write, but had one or two letters from him, and saw two or three that a bank had, and *thought* the signature was his.

Error to Oceana. (Dickerman, J.) Argued October 9, 1889. Decided November 1, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*W. E. Ambler* (*L. G. Rutherford,* of counsel), for appellant, contended:

1. A. only can indorse a note payable to A. for the use of B.; citing 2 Par. Bills & Notes, 4; Chitty, Bills, 202; 1 Dan. Neg. Inst. 610; *Smith v. Kendall,* 6 Term Rep. 123; *Feltmakers v. Davis,* 1 Bos. & P. 101 (note c).

2. Where a bill is payable to the order of two or more persons who are not partners, all must indorse; citing *Ryhiner v. Feickert,* 92 Ill. 305; *Lane v. Stacy,* 8 Allen, 42.

3. The object of a corporate name is to identify the corporation; citing *Walrath v. Campbell,* 28 Mich. 112.

4. If a person to whose order a bill is meant to be payable is wrongly designated, or if his name is misspelled, he may negotiate the bill by indorsing it as described; citing *Chenot v. Lefevra,* 3 Gil. (Ill.) 637.

5. If the parties bear two names which are quite similar, but not the same, it seems to be held that no evidence is admissible to show that any person was payee with the right of indorsement excepting him who bore that very name; citing 2 Pars. Bills & Notes, 4; *Bolles v. Stearns,* 11 Cush. 320; Edwards, Bills & Notes, 251.

6 The question of title to the note or property therein is one of the necessary requisites to enable plaintiff to recover, and, if the law does not raise the presumption in his favor by the construction of the instrument, he must offer evidence to show the fact; citing *Redmond v. Stansbury,* 24 Mich. 445; *Peabody v. McAvoy,* 23 Id. 526; *Spicer v. Smith,* Id. 96; *Robinson v. Wilkinson,* 38 Id. 299.

*Gurney & Travis* (*F. J. Russell,* of counsel), for plaintiff, contended:

1. We insist that the note was to be paid to the First National Bank at Boise City, the same as commercial paper is frequently made payable at a bank, but that E. Pinkham was in fact the payee, and that his indorsement controlled, and that appearing in blank the note was payable to bearer, though Cockell could have paid it when due at the bank, at Boise City.

2. How. Stat. § 7463, providing for notice where the distance exceeds 240 miles, was designed to provide a maximum limit

for long distances which under the other rule would require a longer time.

3. The certificate to the deposition shows that Philip A. Hoyne is a notary public, duly commissioned and sworn, and whose acts as such are entitled to credit; and when he acted as such notary, as in this case, and the certificate says that those acts are entitled to credit, it will be presumed that he acted within the scope of his powers; citing *Bank v. Deyo*, 6 Cow. 732.

CAMPBELL, J. Plaintiff sued defendant in the Oceana circuit court, and recovered on the following instrument:

" $1,235.00. Six months after date, for value received, I promise to pay to the First National Bank of Boise City, Idaho, in favor of E. Pinkham or order, the sum of twelve hundred and thirty-five dollars, with interest at eight per cent. per annum. HARVEY COCKELL.

" *Chicago, Dec.* 11, 1885."

The declaration, in a special count, set up this paper, and averred—

"That the E. Pinkham mentioned in said written promise is the plaintiff in this suit, and that, to wit, on the day and year and at the place aforesaid, and after the making of said promise, the said First National Bank of Boise City, Idaho, assigned all its right, title, and interest in and to said promise or contract to the said plaintiff."

It also contained the common counts for goods sold and delivered, and for work and materials, as well as the money counts, with notice that the plaintiff would introduce in evidence, under the money counts, the promissory note before referred to. The copy annexed contained nothing but the face of the paper.

The defendant pleaded the general issue, and gave special notice of want of consideration, and set out that the paper was given in a horse trade, in which plaintiff gave false representations and a false warranty; and asked for recoupment of damages.

On the trial the paper in question was introduced in evidence, and showed on its back this indorsement:

"E. PINKHAM."

"Pay to the order of Citizens' Exchange Bank (Hart, Mich.), for collection, for account of First Nat. Bank of Idaho.            JOHN HUNTOON, Cashier."

A line had been drawn through all the words between "Pinkham" and "First Nat. Bank," etc.

Against defendant's objection, this note was received in evidence, without any proof of signatures of any one; and plaintiff's attorney, Mr. Travis, proved the computation of interest, and was the only witness produced by plaintiff in making out his opening case. Defendant's counsel cross-examined Mr. Travis, who swore that his firm received the paper, in the spring of 1887, from the bank at Hart, having the indorsement, with no part of it erased, and that they sent it to the First National Bank of Idaho, from which it came back, with the erasure. Whether this was before or after the suit—which was by attachment—was begun, he could not say.

On redirect examination, he testified that he never saw Huntoon write, but had one or two letters from him, and saw two or three the Citizens' Exchange Bank had, and thought the signature was his. The note did not come into the hands of witness till after due. He was not sure of having received more than one letter, and whatever he had were lost or destroyed. In response to plaintiff, he said the letter-head read, "First National Bank, Idaho," and John Huntoon signed as cashier; that he did not know but there were two national banks at Boise City, Idaho,—one First National Bank, Boise City, Idaho, and one First National Bank, Idaho. Defendant objected again to the introduction of the instrument for want of sufficient proof of Huntoon's signature, or of his authority to sign, and also because it does not purport to be signed on behalf of the bank named in it, but on

behalf of a different bank. The court overruled the objections, and plaintiff rested his case.

Defendant put in testimony in support of his plea; showing the note was given for a lot of horses warranted and represented to be sound, and that they were worthless,—most of them dying, and the rest of no value. The testimony, if believed, made out a full defense.

Plaintiff introduced himself, and some other witnesses, in rebuttal,—including two letters of defendant, which he claimed were the only two he happened to have kept, and to which defendant's counsel objected, because the rest of the correspondence should have been produced. The question of handwriting of these became immaterial.

Plaintiff offered a deposition taken at Chicago, before a notary public, which was objected to because there was no proof he was a proper officer, although properly certified to be a notary,[1] and because the notice should have been 20 days, and was short of that. The affidavit of Mr. Ambler was introduced that the distance from Pentwater to Chicago was 240 miles, and it was more than 242 miles to the notary's office. Plaintiff's counsel made affidavit that it was not more than 229 miles to Chicago, and not more than 6 miles further to the notary's office, according to an annexed time-table. According to this table, the distance from Pentwater to the notary's office would appear to correspond with defendant's showing, and not with plaintiff's, if we add up the figures correctly, from the printed record. There may be some error in this; but it certainly seems that the objection was valid, if 20 days' notice was needed; and, as the deposition was *ex parte*, it was not waived.

Defendant was not permitted to give evidence, in

---

[1] The clerk's certificate shows " that Philip A. Hoyne is a notary public in said county (Cook), duly commissioned and sworn, and whose acts as such are entitled to credit."

answer to plaintiff's rebutting evidence, as to the remainder of his correspondence with plaintiff on either side.

The court, against objection, held and treated the paper sued on as established, and belonging to plaintiff, and did not leave any question to the jury, except as to the facts pleaded in defense.

The statute concerning depositions requires at least one day's notice for each 20 miles travel, with a provision that where the distance exceeds 240 miles 20 days' notice shall be sufficient. How. Stat. § 7463. We do not think this was meant to enlarge the time, in any case, beyond the period of 1 week-day for each 20 miles, but it was only to fix a maximum which should suffice for distances beyond 240 miles. There is no reason why 11 days should suffice for 220 miles, and 7 additional days be allowed for the additional 21 miles. We do not think the deposition was bad for lack of notice; and, as we must hold the presumption, according to the general custom, that a notary can administer oaths, we do not think Mr. Hoyne should be held incompetent to do so without proof. If the statutes of Illinois give him no such power, it can be shown by the statute-books.

We can see no reason why defendant should have been prevented from showing the full correspondence between him and plaintiff. The letters introduced by plaintiff were brought in on rebuttal, and defendant had no occasion to introduce testimony on the subject earlier.

Apart from some minor questions, which may not come up again, we think a fatal defect exists in the proof of title to the paper. This controversy being between defendant and plaintiff, concerning the consideration of the paper, if plaintiff owned it, the defense was relevant. If he did not own it, he could not sue upon it, under the declaration.

The form of the paper is peculiar. Taken as it reads,

it indicates that, for reasons of his own, plaintiff had it made payable to the bank named in it, to be held subject to his order. Or, in other words, he made the bank his bailee, or trustee, for his benefit. It is certainly legal and proper for a person to appoint a special payee of funds in his own interest, and there may be contract or other relations calling for it. Such paper, although not very common, is not unknown. Chitty lays it down, on the faith of several cases, some of which are early ones, that paper payable to one for the use of another must be sued for by, and paid to, the trustee. Chit. Bills, 180. Other text-books, referred to on the argument, are to the same effect. The doctrine which treats the beneficiary as owner of property is equitable, and not legal, and is not universal in equity. The policy of the law does not favor ambiguities in negotiable paper.

In the present case, the declaration goes upon the ground that the paper was once owned by the bank to which it was made payable and assigned to plaintiff; and plaintiff's testimony shows, or tends to show, that the bank was the real owner, whether as payee or indorsee from plaintiff. The testimony shows that the note was sent to the bank at Hart, to be collected for the bank at Idaho; and plaintiff's attorney testified that he received it from the Hart bank, and does not say it was not received on account of the Idaho bank. And when he sent it to the latter bank, and received it back, with the special indorsement for collection by the Hart bank erased, it still held plaintiff's indorsement as first indorser; and Huntoon's indorsement is unexplained, and just as consistent with title in the bank as any other.

If, as seems to be suggested, plaintiff's title must be traced through this indorsement from the bank which owned it, there is a double difficulty in the case. There is no evidence that the First National Bank of Boise

City, Idaho, is identical with the First National Bank of Idaho, neither is there any proof that Huntoon was cashier of either of them. It would be going pretty far to hold that Huntoon's handwriting was sufficiently proved without some further examination into the witness' means of knowledge. Where one or more letters, purporting to come from a certain person, are recognized by him in subsequent transactions, that may, in some cases, be admissible on questions of handwriting. But the mere receipt of letters purporting to be from a person never seen, and with whom no subsequent relations existed which were based on them as genuine, has no value as means of knowledge. Where there is no direct knowledge of handwriting, there must be something which assures the recipient of letters, in a responsible way, of their genuineness, before he can swear to their writer, or use them as comparisons of handwriting.

Had the proof been sufficient to go to the jury, it was their province, and not that of the court, to determine the facts; and the court had no right to pass upon any essential fact on the merits.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.