Carver v. Taylor.

JOHN F. CARVER, APPELLANT, V. FRANK TAYLOR,
APPELLEE.

[FILED OCTOBER 26, 1892.]

1. **Real Estate:** BREACH OF CONTRACT TO CONVEY: PETITION.
*Held*, That the cause of action set forth in the petition relates
solely to the breach of contract of the defendant to convey the
real estate described in the petition.

2. ———: ———: MEASURE OF DAMAGES.  In case of the breach
of an executory contract to convey real estate where the vendor
having title refuses or puts it beyond his power to convey, and
no part of the consideration has been paid, the measure of dam-
ages which the vendee is entitled to recover is the value of the
land at the time the contract should have been performed less
the contract price.

3. ———: ———: ———: NOMINAL DAMAGES.  Where the land
is of less value than the contract price, the vendee is entitled to
recover nominal damages for the breach of contract.

APPEAL from the district court for Adams county.
Heard below before GASLIN, J.

*M. A. Hartigan,* and *J. C. Hartigan,* for appellant.

*Jno. M. Ragan, contra.*

MAXWELL, CH. J.

The cause of action is set forth in the petition as fol-
lows:

"First—That on the 19th day of January, 1889, the
plaintiff John F. Carver entered into a contract with the
defendant Frank Taylor in words and figures as follows:

"'Agreement made and entered into this 19th day of
January, 1889, by and between John F. Carver, of Allen
county, Indiana, as agent, and Frank Taylor, of Adams
county, Nebraska, in which agreement the said Frank
Taylor, of the second part, agrees to convey by warranty

deed, clear of all incumbrances, the following described real estate, to-wit: Lots numbered 1, 2, 3, 4, 5, 6, and 7, in block number 2, in Birdsall's addition to the city of Hastings, Adams county, Nebraska; said lots front on Colorado avenue, and are each fifty feet front, running back one hundred and fifty feet to an alley on the west end of said lots. Said Frank Taylor also agrees to convey, by warranty deed, clear of all incumbrances, to said John F. Carver lot No. 8 in aforesaid addition; said lot also fronting on Colorado avenue to the east, and seventy-five feet front, and running back 150 feet to the aforesaid alley, said lot being in block No. 2 in Birdsall's addition to the city of Hastings.

" 'It is mutually agreed that the aforesaid lots shall be rated at $8,000 in the exchange to be effected by this agreement and under its terms. In addition to the conveyance of the above described lots the said Frank Taylor agrees to pay to the said John F. Carver, or his order, $4,000 on the terms and conditions of this agreement. In consideration of the conveyance of the aforesaid lots and the payment of the $4,000 by the said Frank Taylor to the said John F. Carver, the said John F. Carver, of the first part, or agent, agrees to furnish to the said Frank Taylor, or the bank designated in this agreement, one case each, consisting of 10,000 cigars of the following brands of cigars, to-wit, one case of "Our Defense," one case "Flowers," one case of "Henry Clay," one case of "Iron King," one case of "American," one case "La Rosa," one case "The Stunner," one case the "Mountaineer," one case "Excelsior," one case "Royal Chiefs," and also eleven cases of "Peerless," and seven cases of "Our Pearl." The said Frank Taylor agrees to execute the aforesaid warranty deeds for the aforesaid lots, and deposit the same, together with abstracts, showing a complete and satisfactory title to be vested in said Frank Taylor to said lots, both deeds and abstracts to be deposited in trust

in the First National Bank of Hastings, Neb., to be held in trust by said bank under the provisions of this agreement, until said John F. Carver, or the manufacturers, shall furnish to said bank the required amount of cigar stock agreed upon in this contract. Said John F. Carver, of the first part, agrees to furnish the brands at the following rates per thousand, to-wit: "Our Pearl," $50 per M; "Peerless," at $38 per M; "Our Defense," at $35 per M; "Flowers," at $35 per M; "Henry Clay," at $40 per M; "Iron King," $39 per M; "American," $40 per M; "La Rosa," $49 per M; "The Stunner," $45 per M; "The Mountaineer," $45 per M; "The Excelsior," at $52 per M; "Royal Chief," $55 per M.'

"The further conditions of this agreement are as follows, to-wit:

"'The said Frank Taylor agrees to pay one-third in cash for any and all orders made under this agreement, the same to be paid out of the $4,000 deposited in the said bank by said Taylor. The said Frank Taylor agrees, on each and every order made under this agreement for cigar stock, to furnish a statement from said bank, and made out by officers of said bank, to said John F. Carver, that the aforesaid bank will pay the aforesaid one-third amount of each and every bill so ordered by the said Frank Taylor in cash, on receipt of the bill of lading and the goods from any railroad or express company that may deliver the goods to said bank on the order of said Frank Taylor to said John F. Carver, the amount to be paid in cash on the different brands per M, on receipt of the same, is as follows, to wit: "Peerless," $12.66⅔ per M; "Our Pearl," $16.66⅔ per M; "Our Defense," $11.66⅔ per M; "Flowers," $11.66⅔ per M; "Henry Clay," $13.33⅓ per M; "Iron King," $13 per M; "American," $13.33⅓ per M; "La Rosa," $15 per M; "The Stunner," $15 per M; "Mountaineer," $15 per M; "The Excelsior," $17.33⅓ per M; "Royal Chiefs,"

$18.33⅓ per M. The said amounts to be paid by the aforesaid bank in cash on receipt of the bill of lading and the goods.

"'The said John F. Carver, as agent, agrees to deliver the said bill of goods as soon after the said Frank Taylor sends his order to the said John F. Carver, or the manufacturers, or the parties who furnish said stock to said John F. Carver deliver the same on John F. Carver's order for said stock in such amounts as said Frank Taylor shall order, when accompanied by the aforesaid statement from bank, that said bank will pay for said goods on receipt of same as specified in their agreement.

"'It is mutually agreed that said Frank Taylor shall furnish as many duplicates of said statement on each order as said John F. Carver may require, not to exceed five duplicates of each order and statement from bank. It is mutually agreed that the aforesaid bank shall hold in trust the aforesaid deeds for the aforesaid lots until their contract is fulfilled.

"'It is further agreed by said Frank Taylor that upon the completion of their contract, and filling the same by the delivery of the aforesaid amount of cigar stock, that the aforesaid bank shall turn over, and the said Frank Taylor hereby directs and empowers the said bank to turn over, the said deeds to John F. Carver, or his order, on the filling of this contract.

"'It is agreed that a sample of the aforesaid brands of cigars shall be deposited with the deeds and abstracts to the aforesaid lots, together with a copy of this agreement, in the aforesaid bank, to be held in trust by said bank for both parties to this agreement, and that the cigars furnished under the provisions of this agreement shall be of the brands specified, and conform in quality to said samples deposited in said bank, and the said Frank Taylor agrees to order in not less than case lots for any brand ordered at any time, and to order said goods in a reasonable time after said goods are packed and ready for shipment.

"'Said Frank Taylor agrees to pay all freight or express-age on said bill of goods from the points of shipment to the city of Hastings, Neb., said goods to be shipped as ordered, by freight or express as said Frank Taylor shall order same.

"'Witness our hands this 19th day of January, 1889.

"'JOHN F. CARVER.

"'FRANK TAYLOR.'

"Second—The plaintiff further shows unto the court that he has in all things pertaining to the said contract, its duties and obligations, fully performed the same; * * * that the defendant Frank Taylor has refused and still refuses to perform and fulfill the conditions of the said contract as he has undertaken so to do.

"Third— * * * That the lands and lots set out in the plaintiff's petition, and specifically designated in the contract as being lots 1, 2, 3, 4, 5, 6, and 7 in block No. 2, were in truth and in fact subdivided by the defendant Frank Taylor, and set out in the contract to represent a larger number of lots than the said space of ground in truth and in fact represents.

"Fourth— * * * That the said lands as truly described upon the plat of the city of Hastings, or the portion of said plat in which it is included, is truthfully and correctly described as follows: Lots 1 and 2, block 2, Birdsall's addition, or that the division and representation, as well as the description in the contract, was made for the false, fraudulent, and dishonest purposes of misleading, cheating, and defrauding this plaintiff.

"Fifth— * * * That he has no remedy outside of the court of equity by which he can obtain a full and fair redress of the wrongs and injuries, as well as the loss and damage caused to this plaintiff by this defendant's conduct.

"The plaintiff therefore prays that the court order, adjudge, and decree that the said defendant specifically perform and execute the said contract as by him made and agreed;

31

that said contract be corrected and reformed to cover and include the exact description of the said lands as the same are really described in the aforesaid plat, the said land being the land included in the said contract by erroneous, fraudulent, and deceptive description given by said defendant.

"The plaintiff further prays that should this honorable court find and declare that the said contract and agreement is not susceptible and subject to a specific performance, then, and in that event, the plaintiff prays that the said action may be retained by the court as an action at law, and that he should have and recover from said defendant his damages by reason of the premises in the same, and in the sum of $10,000, with his costs and disbursements in and about the said action made and expended."

To this petition an answer was filed, in which it is alleged that the defendant has conveyed the lots in dispute and therefore cannot convey the same. On the trial of the cause the court rendered judgment in favor of the plaintiff for five cents damages, from which the plaintiff appeals.

We have carefully read all the evidence and exhibits and are fully convinced that the judgment is right. It will be observed that the petition is framed to enforce specific performance, or to recover damages for the failure to convey the land. In such case the measure of damages, where, as in this case, the vendor had title when the conveyance should have been made, and refuses to convey or disables himself from so doing by parting with the title, is the value of the property at the time the contract was to be performed, less the purchase price. (*Dustin v. Newcomer*, 8 O., 50; *Hopkins v. Lee*, 6 Wheat. [U. S.], 109; *Wells v. Abernethy*, 5 Conn., 222.)

In *Hopkins v. Lee, supra,* the court says: "The rule is settled in this court that, in an action by the vendee for a breach of contract on the part of the vendor for not delivering the article, the measure of damages is its price at the

time of its breach.   The price being settled by the contract, which is generally the case, makes no difference, nor ought it to make any; otherwise the vendor, if the article have risen in value, would always have it in his power to discharge himself from his contract, and put the enhanced value in his own pocket; nor can it make any difference in principle whether the contract be for real or personal property if the lands, as is the case here, have not been improved or built on.   In both cases the vendee is entitled to have the thing agreed for at the contract price, and to sell it himself at its increased value.   If it be withheld, the owner ought to make good to him the difference."   The court in this case found that the defendant had acted in good faith and, in effect, that he was unable to convey to the plaintiff, but as the proof clearly shows that the land was of much less value than the price at which it was agreed the plaintiff should purchase the same, he suffered no actual damages by the refusal of the defendant to convey.   The defendant, however, would be liable for nominal damages for a breach of the contract.

No facts are stated in the petition showing a loss of the plaintiff upon the cigars, and the proof upon that point is equally unsatisfactory.   The plaintiff claims to have contracted for a part of the cigars, but what part he fails to state.   He does not allege or claim that he had purchased and had, under the contract, any of the cigars.   It is true he states in his testimony that he had contracted with three firms known to manufacture certain cigars for this contract, but he fails to state any fact from which the court would be justified in awarding him substantial damages.   Upon the whole case it is apparent that the judgment is right and it is

AFFIRMED.

THE other judges concur.