Talbott, Administrator, *v.* Hedge.

No. 650.

## TALBOTT, ADMINISTRATOR, *v.* HEDGE.

PROMISSORY NOTE.—*Action upon.*—*Genuineness of Signature.*—*Evidence.*— Where the genuineness of the signature of a decedent to a promissory note was in dispute, it was not error to allow the note to be read in evidence, upon the testimony of a witness who stated that he used to be acquainted with the decedent's signature, but had not seen it for several years; that it looked like and probably might be her signature; that it was probably her signature; that it had a general likeness to her signature as he remembered it. The testimony was not strong or positive, yet the witness had such an acquaintance with the signature of the decedent as to enable him to have an impression or belief upon the question, and the declaration of such impression or belief amounted practically to the expression of an opinion.

SAME.—*Testimony as to Signature.*—*Insufficient Basis of Knowledge.*—A letter purporting to come from one and signed in his name, will not furnish a sufficient basis of knowledge to permit the one who received such letter, to give an opinion respecting the genuineness of the signature of the putative writer to another instrument, unless the one whose name was signed to the letter, in some manner, subsequently acknowledged the signature to be his.

From the Montgomery Circuit Court.

*B. Crane* and *A. B. Anderson,* for appellant.
*A. D. Thomas* and *W. T. Whittington,* for appellee.

CRUMPACKER, C. J.—This is an appeal from a judgment allowing a claim in favor of Martha J. Hedge against John E. Talbott, administrator of the estate of Isabel Durham, deceased, based upon a promissory note alleged to have been executed by the decedent.

The execution of the note was the only contested question of fact upon the trial, and all of the questions relied upon for a reversal of the judgment arise under the motion for a new trial.

It is first insisted that the court below allowed the note to be read to the jury before its execution had been sufficiently proved. Preliminary to the reading of the note appellee introduced as a witness James F. Harney, who testified that

he was acquainted with the decedent from 1870 to the time of her death; that he "used to be" acquainted with her signature, but had not seen it for several years. He was then shown the note in controversy and asked if, in his opinion, the signature was hers. He answered: "I could say nothing to a certainty. I have a general memory of her signature several years ago. It looks like probably it might be her signature; it is something after my memory that it is." In answer to other questions upon the subject the witness said: "Well, I can not say it is her signature. I will say it is probably her signature; it has a general appearance as I remember it. I do not know that I have information enough to say, or that I would form an opinion that I would abide by. I can only judge from the general appearance, and from that form an impression, but I do not know. It is my impression that that would be her hand-writing, just from the looks of it."

Upon this evidence the note was read to the jury. It was necessary to introduce evidence fairly tending to prove the execution of the note before it could be read to the jury. Section 364, R. S. 1881. The rule respecting the quantity of evidence in such cases was laid down by the Supreme Court in the case of *Pate* v. *First Nat'l Bank, etc.*, 63 Ind. 254, as follows: "Where evidence addressed to the court is adduced, making out a *prima facie* case of the authenticity of such note or other instrument, or reasonably tending, even slightly, to prove the formal execution of it, such evidence is sufficient to entitle such note or other instrument to go to the jury." While the testimony of Harney was not strong or positive, yet he had such an acquaintance with the signature of the decedent as to enable him to have an impression or belief upon the question, and the declaration of such impression or belief amounted practically to the expression of an opinion.

In the case of *Garrells* v. *Alexander*, 4 Esp. 37, a witness testified that he had seen the person whose signature was in

dispute, sign his name but once. He declined even to express any belief that the signature in question was genuine, but said it looked like the genuine signature as he remembered it. The court held the evidence sufficient to admit the note. In Rogers Expert Testimony, page 286, the rule is declared to be: " Where the genuineness of handwriting is in issue, the belief of any person is admissible, who has seen the person write whose writing is the subject of dispute. And the belief of such a witness is admissible, although he may have seen the person whose writing is in question write but once, and that ten or twelve years before." This rule is based upon the assumption that the witness has in mind a sufficient likeness of the genuine signature to form the basis of a belief respecting the one in dispute. In the case in hand the witness was not interrogated in relation to the source of his knowledge of the signature of the decedent, but having declared that he was acquainted with it at one time, and being able to form a belief with respect to the genuineness of the signature in question, he was a competent witness, and the court properly admitted the note upon his testimony. The source of his knowledge, if unsatisfactory to the appellant, should have been explored by cross-examination. 1 Greenleaf Ev., section 577 ; 9 Am. & Eng. Encyc. of Law, p. 275.

It is next contended that the court erred in permitting one John Barber, a witness in behalf of appellee, to give his opinion respecting the genuineness of the signature to the note in question. This witness testified that several years before he lived upon a farm adjoining the one upon which the decedent resided, and he thought he knew her signature, because at that time he received a notice purporting to come from her, and to which her name was signed, ordering him to remove a partition fence between the respective farms and place it upon the line. The notice was addressed to the witness, and pertained to a matter between him and the decedent ; it was delivered to him by a person living in her family, and

he supposed she signed it, although he did not see her sign it, nor did he ever have any communication with her in relation to it. He never saw her write, and there was nothing in the evidence tending to show that the decedent ever acknowledged the notice to be authentic, or the signature to be hers, or that the witness acted upon it. This was the only qualification the witness had to testify upon the subject, and in giving his opinion he declared that he did not know whether the decedent signed the notice or not, but if she did, he thought she signed the note also, because the two signatures were much alike.

The signature to the notice was not admitted to be genuine; the notice was not produced at the trial, nor would it have been competent evidence if it had been. The rule is elementary, that before a non-expert witness may give his opinion respecting the genuineness of the signature of another person, he must show some personal acquaintance with the genuine signature. Such acquaintance need only be slight, for the purpose of establishing the competency of the witness, but it must be founded upon facts showing a reasonably reliable basis for an opinion.

It is not necessary that the witness should have seen the person write whose signature is in question, provided he has acquired a knowledge of the genuine signature through correspondence, business intercourse or some other reliable manner, but in such cases the circumstances must establish a fair presumption at least of the genuineness of the handwriting or signature upon which the acquaintance is founded. Its genuineness must have been recognized by the writer in some satisfactory manner. A letter purporting to come from one, and signed in his name, will not furnish a sufficient basis of knowledge to permit the one who received such letter to give an opinion respecting the genuineness of the signature of the putative writer to another instrument, unless the one whose name was signed to the letter, in some manner, subsequently acknowledged the signature to be his.

A course of correspondence may amount to such acknowledgment, but a single letter or message will not in the absence of further communication of some character.

In the case of *Drew* v. *Prior*, 5 M. & G. 264, an attorney offered to testify to his opinion of a contested signature. He had never seen the person write, but had received a written retainer at one time signed in his name and the names of two other persons. He was held incompetent.

In the case of *Cunningham* v. *Hudson River Bank*, 21 Wend. 556, the court, in discussing this question, said: "A witness must, in some way, have acquired a knowledge of the general character of the party's hand-writing before he can be qualified to testify on that subject. If he has not seen the party write, he must have seen genuine specimens of his hand-writing; and the fact that they were genuine must be proved. It is not enough that they purport to come from the person whose hand-writing is in question."

The Supreme Court of Illinois, in the case of *Putnam* v. *Wadley*, 40 Ill. 346, said upon the same subject: "It is not enough that the witness may have seen the signature of the party to other instruments than that, the execution of which is sought to be established, unless such other instruments are shown to have been recognized by the party as having been signed by him."

It was said by the court in the case of *Pinkham* v. *Cockell*, 77 Mich. 265: "Where one or more letters, purporting to come from a certain person, are recognized by him in subsequent transactions, that may, in some cases, be admissible on questions of hand-writing. But the mere receipt of letters purporting to be from a person never seen, and with whom no subsequent relations existed, which were based on them, as genuine, has no value as means of knowledge. Where there is no direct knowledge of hand-writing, there must be something which assures the recipient of letters, in a responsible way, of their genuineness, before he can swear to their writer, or use them as comparisons of hand-writing."

To the same effect will be found: *Brant* v. *Dennison*, 5 Atl. Rep. 869; *Hopper* v. *Ashley*, 15 Ala. 457; *Pope* v. *Askew*, 1 Ired. 16; *U. S.* v. *Johnson*, 1 Cranch (C. C.), 371.

In the case before us the witness had no authentic basis of knowledge, and his testimony should have been excluded. He fully disclosed the source of his knowledge before he gave his opinion, and while his evidence might not have been accorded much weight by the jury, yet the fact that it was admitted over objections gave it some character and influence, and would very naturally lead the jury to suppose that it should be considered in their decision of the case. There was no evidence tending to prove the execution of the note except the testimony of Harney and Barber, the substance of which is set out in this opinion.

Upon the other hand, a number of witnesses, who had frequent business transactions with the deceased and who were well acquainted with her hand-writing, testified that she did not sign the note. In view of such condition of the evidence, the error of the court in permitting Barber to testify was harmful.

The judgment is reversed, with instructions to grant a new trial.

Filed Dec. 13, 1892.