JOHN M. VIOLET v. H. F. ROSE.

FILED MARCH 6, 1894.    No. 5513.

1. **Negotiable Instruments:** BONA FIDE HOLDER: DEFENSES: BURDEN OF PROOF. It seems that in an action by an indorsee of a promissory note against the holder, where the defendant pleads fraud in the inception of the note, the burden is upon the plaintiff to show that he is a *bona fide* holder for value, but that, where the defense pleaded is failure of consideration, the burden is upon the defendant to show that the plaintiff did not pay value for the note, or that he took it with notice.

2. ———: ———: ———: ———. Accordingly, where a defendant in such a case pleads both fraud and failure of consideration, it is not error for the trial court to permit the introduction of evidence as to the transactions between the original parties before the defendant has by evidence attacked plaintiff's *bona fides,* especially in view of the rule that the order in which proof shall be introduced rests within the discretion of the trial court.

3. **Trial:** SURPRISE: WITHDRAWAL OF JUROR. Where, upon a trial, a party is taken by surprise by the admission or exclusion of evidence, the trial court may permit the withdrawal of a juror and continue the case; but the propriety of such action rests within the sound legal discretion of the trial judge.

4. ———: ———: ———. Where the pleadings notify the party seeking the continuance of the character of the evidence which his adversary will offer, and where no reason is shown for his not being prepared to meet such evidence, except his reliance upon an issue of law arising upon the trial, which is determined against him, it is not error for the trial court to refuse permission to withdraw a juror and continue the case.

5. Instructions: HARMLESS ERROR. The submission incident-
ally to the jury in the course of an instruction of a fact ad-
mitted by the pleadings is not prejudicially erroneous, where
the instructions, taken as a whole, do not place the existence of
that fact before the jury as a controverted issue, and where, upon
a review of the instructions and the evidence, it appears that
the jury could not have been misled. *Dayton v. City of Lincoln*,
39 Neb., 74, distinguished.

6. Conveyance of Homestead. In order to convey a home-
stead, the instrument of conveyance must be signed and ac-
knowledged by both husband and wife.

7. Review: VOLUNTARY STATEMENT BY WITNESS. Considera-
tion will not be given in this court to an assignment of error
based upon the admission in evidence of a statement by a wit-
ness not responsive to the question he was answering, although
such question was objected to, unless by a motion to strike out
that portion of his answer, or otherwise, the trial judge was
given an opportunity to rule upon the particular testimony, the
admission of which is assigned as error.

8. Handwriting: HOW PROVED: COMPETENCY OF EXPERT WIT-
NESS. Where the genuineness of a signature is in controversy,
a witness may testify as to his opinion upon the subject, where
his knowledge of the disputed handwriting is not derived from
ever having seen the person write, but where he has addressed
that person a letter, received a letter in answer thereto coming
from another post-office than the one to which his letter was ad-
dressed, and where further correspondence has ensued because
of such letter, and acts have been performed showing that the
person whose handwriting is in controversy has acted upon the
letters as genuine.

9. Transfer of Vendee's Interest in Contract for Sale of
Real Estate. In order to transfer the interest of a vendee in
an executory contract for the purchase of land it is only necessary
that there should be a memorandum in writing signed by the
person to be charged; neither attesting witness nor acknowledg-
ment is necessary as between the parties.

10. Damages: BREACH OF CONTRACT TO CONVEY REAL ESTATE.
The measure of damages in favor of a vendee of real estate
against a vendor who delays performance, but who ultimately
conveys, the vendee accepting the conveyance, is the difference
between the value at the time the conveyance should have been
made and the value when it was made; but where the vendor
has in the meantime kept the vendee out of possession, to the

damage thus ascertained should be added the rental value of the property during the period of delay.

11. ———: ———: LOSS OF PROFITS ON RESALE. The profit which would have been made through a bargain for the resale of the property pending a delay is not an element of damages, at least where at the time of the contract the vendor did not know that the vendee was purchasing for the purpose of a resale.

ERROR from the district court of Lancaster county. Tried below before HALL, J.

The facts are stated by the commissioner.

*Abbott, Selleck & Lane,* for plaintiff in error:

Denial of plaintiff's request to withdraw a juror was such an abuse of discretion as entitles plaintiff to a new trial. (Maxwell, Pleading & Practice, 429; *People v. Judges,* 8 Cow. [N. Y.], 126.)

Defendant was not qualified as an expert to testify to the handwriting of Mrs. McCurday. (*Rogers v. Ritter,* 12 Wall. [U. S.], 321.)

The admission in evidence of a letter purporting to be written by Mrs. McCurday, without proof of signature, was error. (*Gartrell v. Stafford,* 12 Neb., 545.)

The measure of damages for breach of a contract to convey real estate is the difference between what defendant agreed to pay for the land and its real market value at the time the breach was made. (*Wasson v. Palmer,* 13 Neb., 378.)

Profits that could have been made on a resale of the land by the vendee are not proper elements of damage, and it was prejudicial error to admit proof thereof. (1 Sutherland, Damages, 114, 116; *Markel v. Moudy,* 11 Neb., 218.)

Under the evidence the McCurdays had no homestead right in the lots in question, and defendant cannot set up such claim to defeat the contract of conveyance. A home-

stead right is a personal privilege. It may be claimed or it may be waived. If claimed, it could only extend to two lots. (Sec. 1, ch. 36, Comp. Stats.; *Rector v. Rotton*, 3 Neb., 171; *Gallagher v. Smiley*, 28 Neb., 194.)

Proof as to the consideration for the note was not admissible till after the holder was shown to have taken with notice of defense. (*Smith v. Columbus State Bank*, 9 Neb., 31.)

*J. R. Webster, M. B. Reese* and *Halleck F. Rose, contra:*

The denial of plaintiff's request to withdraw a juror was right, because there was no proof or showing of surprise; defendant's answer apprised plaintiff of the character of evidence he would be required to meet; plaintiff had opportunity, on motion for new trial, to make showing of surprise and existence of newly-discovered evidence, and failed to do so; and it would have been improper to have permitted the exercise of this right as a mere pretext for a continuance. (Secs. 314, 317, Code; Maxwell, Pleading & Practice, 429, 430.)

The order in which proof may be admitted is discretionary with the trial court. At what stage in the trial any material fact is proved is immaterial if all the other necessary facts are afterwards proved. (*Goodman v. Kennedy*, 10 Neb., 270; *Ponca v. Crawford*, 18 Neb., 551.)

The indorsement in this case was by a contract *in extenso* in the form of an assignment written on the back of the note. The contract was not the implied contract of indorsement, and the holder was not entitled to be protected under the law merchant as a *bona fide* indorsee. (*Aniba v. Yeomans*, 39 Mich., 171; *Lyons v. Divelbis*, 22 Pa. St., 185; *Hailey v. Falconer*, 32 Ala., 536.)

The homestead of a married person cannot be conveyed or incumbered unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife. (Sec. 4, ch. 36, Comp. Stats.; *Cobbey v. Knapp*, 23 Neb., 579; *Phillips v. Bishop*, 31 Neb., 853.)

The profit which vendee could have made on a resale is a proper element of damage. (1 Sutherland, Damages, 130; *Drake v. Baker*, 34 N. J. Law, 358; *Engell v. Fitch*, 3 L. R., Q. B. [Eng.], 314.)

Irvine, C.

The plaintiff in error sued the defendant in error upon a promissory note dated April 9, 1889, and alleged to have been made and delivered by the defendant to Hiram M. McCurday, and payable to his order one year after date. Plaintiff alleged that on October 22, 1889, McCurday indorsed the note as follows: "I hereby assign the within note to John M. Violet and authorize him to collect the same. H. M. McCurday," and delivered the note to plaintiff. Rose answered substantially as follows:

First—Denying the indorsement and alleging that Mc-Curday was the owner and the real party in interest.

Second—That whatever interest plaintiff had in the note he acquired with full notice of all the facts, and not in the usual course of business, for value before maturity.

Third—That upon April 9, 1889, defendant executed the note for delivery, upon receipt from McCurday, of a deed of assignment, executed and acknowledged by himself and Catherine McCurday, his wife, conveying to defendant all their interest in certain land in the city of Lincoln, being then their homestead, and that on said day McCurday fraudulently, and without consideration, presented to the defendant a deed of assignment with the names Hiram McCurday and Catherine J. McCurday signed thereunto as apparent grantors, and fraudulently represented to plaintiff that Catherine McCurday had executed the same, that it was her own signature thereunto written, and that she would personally appear next morning before a notary public and make formal acknowledgment of such instrument; and that, relying upon such representations, defendant delivered the note to McCurday; whereas, in fact,

said signature of Catherine McCurday was a forgery, and Catherine McCurday never did acknowledge the instrument, and that defendant took nothing by said instrument, and plaintiff retained possession of the premises until December 1, 1889; that upon December 1, 1889, the said McCurday transmitted to the defendant a quitclaim deed to said premises, but without attesting witnesses, and that during the delay, and while the conveyance was wrongfully withheld, the incumbrance, because of accruing interest, delinquent taxes, and cost of a foreclosure action brought against the McCurdays, so increased that the defendant was compelled to pay by reason of such increase $950, being the whole amount for which the note was given. The answer further averred that the contract of sale was made with a view to a present conveyance, and, as McCurday knew, in order that defendant might resell at a profit; that defendant afterwards secured purchasers for said land at a profit to himself of $1,000, but was unable to convey because of the delay of the McCurdays in conveying title, and that since receiving the quitclaim deed the premises have not been salable at all by reason of the pending foreclosure suit.

The averments of the answer were met by a general denial.

A verdict was returned for defendant and judgment entered thereon from which plaintiff prosecutes error.

1. The defendant claimed and was conceded the right to open and close, whereupon the defendant himself was sworn and was almost immediately asked what was the consideration of the note. This was objected to for the reason that such evidence was inadmissible until it should be first established that the plaintiff was not a *bona fide* holder. This objection was overruled and the defendant permitted to go into the transaction between himself and the McCurdays. Several assignments of error relate to this class of testimony.

It is a universal principle that in the absence of any attack upon the validity of a negotiable instrument, as between its original parties, the holder bringing the action upon it is presumed to be a *bona fide* holder for value. When, however, the holder or acceptor in an action against him upon the instrument sets up matter in defense which would constitute a valid defense were the action brought by the original payee, it is frequently a question of difficulty as to where the burden of proof lies upon the issue of *bona fides.* The writer is unable to perceive why, upon different defenses, there should be any distinction as to the burden of proof upon that issue, whatever the defense pleaded. It may be urged upon one side that the policy of the law merchant, in favoring the free negotiation of bills and notes, demands that the maker, in order to defend against an indorsee, should prove affirmatively that such indorsee is not a *bona fide* holder for value, and to this argument there may be added that the plaintiff in such a case has already in his favor a presumption of *bona fides,* and that no evidence of a defense growing out of transactions between the original parties has a natural tendency to rebut such presumption; but, upon the other hand, whatever may be the fundamental defense, it would seem that the proof of a *bona fide* purchase for value before maturity lies peculiarly within the possession of the plaintiff; that such facts are always easily susceptible of proof by him, whereas proof of *mala fides,* or want of consideration, even where the facts exist, is frequently beyond the knowledge or reach of the defendant. These arguments upon either side apply with equal force, whatever may be the fundamental defense, but unfortunately the courts have drawn distinctions between defenses. The numerous decisions disclose a general tendency to cast the burden of *bona fides* upon the plaintiff where illegality of consideration or fraud is alleged, and in other cases, to cast the burden of showing notice or want of consideration upon the defendant. But

even the test suggested by this general tendency of author-
ities is not trustworthy, for the classification thus resorted
to has not been strictly recognized, and possibly it has not
been absolutely observed by the courts of any state. While
this confusion of authorities is to be regretted, the distinc-
tions referred to, whether well or ill-founded, have been
recognized everywhere, and our own decisions probably ap-
proach the general classification referred to as nearly as
those of any state.     Thus, it has been held that where usury
is established, the burden is upon the plaintiff to show *bona
fides.* (*Wortendyke v. Meehan,* 9 Neb., 221; *Olmsted v.
New England Mortgage Security Co.,* 11 Neb., 487 ; *Darst
v. Backus,* 18 Neb., 231 ; *Sedgwick v. Dixon,* 18 Neb., 545;
*Cheney v. Janssen,* 20 Neb., 128; *Knox v. Williams,* 24
Neb., 630; *Lincoln Nat. Bank v. Davis,* 25 Neb., 376;
*Blackwell v. Wright,* 27 Neb., 269; *Richardson v. Stone,*
28 Neb., 137; *First Nat. Bank of North Bend v. Milton-
berger,* 33 Neb., 847; *Colby v. Parker,* 34 Neb., 510.) So
also where the evidence established the theft of a note
payable to bearer. (*Hooper v. Browning,* 19 Neb., 420.)
So, too, where fraud in the inception of the note is proved.
(*Haggland v. Stuart,* 29 Neb., 69.) On the other hand,
where the defense was in the nature of failure of considera-
tion, and the plaintiff, as a part of his case in chief, had in-
troduced evidence tending to show a *bona fide* purchase,
it was held that no testimony in support of the fundamental
defense was proper, unless the defendant introduced evi-
dence tending to show that the plaintiff was not a *bona fide*
purchaser. (*Western Cottage Organ Co. v. Boyle,* 10 Neb.,
409.) In *Cannon v. Canfield,* 11 Neb., 506, the inference
is that where want of consideration is shown the burden is
also upon the maker to prove notice to the indorsee. The
same inference is to be drawn in case of failure of consid-
eration, from *Citizens Bank v. Ryman,* 12 Neb., 541. But
a contrary inference might be drawn from a closing para-
graph of the opinion in *Fifth Nat. Bank of New York City*

v. *Edholm*, 25 Neb., 741. In *Coakley v. Christie*, 20 Neb.,
509, it was distinctly decided that in the case of a note
given in payment of a piano sold with a warranty, evidence
of the fundamental defense was properly excluded, for the
reason that ·there· was no tender made of proof that the
plaintiff was not an innocent purchaser.

It would seem from this· review of the authorities that
the defendant, where fraud is pleaded, makes out his case
simply by proof of the fraud, and that the plaintiff must af-
firmatively establish *bona fides;* but that where the defense
is failure of consideration the defendant must establish both
failure of consideration and *mala fides* on the part of the
plaintiff, or the fact that he was not a purchaser for value.
Now, in the case before us, the defendant pleaded both
fraud and failure of consideration. When he opened his
case the situation was this: Should he succeed in showing
that the instrument of assignment brought to him by Mc-
Curday, purporting to be signed by both McCurday and
wife, did not in fact bear Mrs. McCurday's genuine signa-
ture, and that the note was procured through the repre-
sentation that such signature was genuine, then fraud
would be established, and it would lie with the plaintiff to
show his *bona fides* in the purchase of the note. If, on
the contrary, the proof of this defense should fail, but the
defendant should succeed in showing that he failed to ob-
tain the property in question because Mrs. McCurday re-
fused or failed thereafter to acknowledge the instrument,
then there would be merely a failure of consideration, and
the defendant, to prevail, would be required to attack
plaintiff's *bona fides.* The burden of proof, therefore, de-
pended upon the evidence introduced upon these issues.
The order of proof rests within the discretion of the trial
court. (*Consaul v. Sheldon,* 35 Neb., 247.) The court,
therefore, did not err in allowing evidence of the funda-
mental defense to be introduced before evidence was offered
as to the good faith of the purchaser. The court instructed

the jury that the burden of proof was upon the defendant upon this issue, so there was nothing in this procedure of which the plaintiff can complain.

2. When the court ruled that the defendant might introduce evidence going to the consideration without first attacking plaintiff's *bona fides* the plaintiff asked leave to withdraw a juror and continue the case. This motion was overruled. The granting or refusing leave to withdraw a juror rests largely within the discretion of the trial court. The object of that procedure is to prevent a failure of justice where a party has been taken by surprise by his opponent's evidence or the exclusion of his own. In *People v. Judges of New York City*, 8 Cow. [N. Y.], 126, it was held that such leave should be given where a party was prevented by accident or mistake from making out his case or establishing his defense; but in *Chandler v. Bicknell*, 5 Cow. [N. Y.], 30, it was held that such practice was improper where there was merely a failure of proof. The surprise which justifies a trial court in permitting the withdrawing of a juror must not be due to the negligence of the party in preparing his case. Here by the answer the plaintiff was distinctly and specifically notified of the defense sought to be introduced. If he had evidence to meet that defense he should have been prepared with it at the trial, and had no right to rely upon the theory that the court would hold that the defendant must first attack plaintiff's *bona fides* and that defendant would be unable to successfully do so, and then, finding himself mistaken in this theory, ask for a continuance. The specific reason given for the motion was that it became necessary for him to take the depositions of the McCurdays. The deposition of the plaintiff was offered in evidence, and from that it appears that he and the McCurdays were then living in the same town. No reason is advanced for not taking their depositions as well as the plaintiff's.

3. By the first instruction the court instructed the jury

as follows: "If the jury believe from the evidence that the defendant made the note in question, then, under the issues joined in this case, the defendant assumes the burden of proving by a preponderance of the evidence not only that the consideration of the note had failed in whole or in part as alleged in his answer, and that he is entitled to the off-sets therein pleaded, but also that the plaintiff took the said note after it became due, or if before due, without paying any consideration therefor, or that he had notice of the alleged defenses at the time said note was assigned to plaintiff, if the evidence shows that it was assigned to plaintiff." The execution of the note was admitted, and it was therefore erroneous to submit the question of its execution to the jury. Was the error prejudicial? In *Dayton v. City of Lincoln*, 39 Neb., 74, decided at the present term, it was held to be prejudicially erroneous to submit to the jury issues arising from the pleadings in support of which there stands uncontradicted sufficient competent evidence, where the effect of submitting such issues may be to mislead the jury and withdraw its attention from the controverted issues. In this case we do not think the instruction quoted could have had any such effect. The statement was not the principal object of the instruction, but was merely incidental to other propositions. The other instructions, instead of emphasizing the false issue, as was the case in *Dayton v. City of Lincoln*, 39 Neb., 74, rather assumed the facts according to the pleadings. Under the circumstances we do not think the error was prejudicial.

4. Error is assigned upon the court's permitting the witness Stewart to testify in general terms that the property was the homestead of the McCurdays. This testimony appeared in a long answer given by him in response to an inquiry as to what negotiation he had entered into with defendant for the purchase of the property. A general objection was introduced to this question, which will be hereafter noticed. The statement that the property was a

homestead was interjected in the course of this answer.  It
was not pertinent to the question asked, no special objection
was interposed to it, there was no motion to strike it out,
and the trial court was given no opportunity to rule upon
this special testimony.  The assignment cannot, therefore,
be considered.  There is ample proof elsewhere in the
record, uncontradicted, that the property was the homestead
of the McCurdays and was by them occupied as such until
long after the note was given.

5.  Objections are made to the giving and refusal of in-
structions relating to the indorsement of the note to plaint-
iff.  The form of the indorsement has been already stated.
The plaintiff contends that the instructions given by the
court left to the jury to determine whether the language
upon the note amounted to an indorsement, and that the
instructions asked by plaintiff and refused correctly charged
the jury that such language constituted an indorsement.
The instructions bearing upon this question are too long to
quote.  That asked by plaintiff and refused is objection-
able because it added to the statement that the language
constituted an indorsement the further statement that it
vested the title and ownership of the note in the assignee.
To have given it would have misled the jury, because it
would be inferred therefrom that the defendant could not
attack the transfer by showing that it was made without
consideration and for the purpose only of maintaining an
action as an indorsee.  The instructions given upon the
subject we do not think bear the construction that the
plaintiff puts upon them.  The instructions distinctly told
the jury what constituted a *bona fide* holder for value of
negotiable paper and what are his rights, and submitted to
it the question as to whether or not the plaintiff was such
a *bona fide* holder under the evidence in the case.  All as-
sumed, although not in so many words stating, that the
assignment upon the note was sufficient in form to enable
the plaintiff to claim under it as a *bona fide* holder for

value. The instructions related, not to the form of the indorsement, which was assumed to be sufficient, but to the evidence in regard to Violet's ownership. Upon this subject the only evidence was of Violet himself, who says in direct examination, referring to McCurday: "I had a trade with him; gave him money; traded stock and merchandise and chattels." Upon cross-examination he says: "I got possession of said note in a legal, *bona fide* way, in the usual way of business." He also says that he paid McCurday no money, that he let him have property at a fair cash value, but the property, to-wit, "stock and merchandise," had not yet been delivered to McCurday and was only to be delivered when the note should be collected. It is doubtful whether upon this evidence a finding that plaintiff was a *bona fide* holder for value could have been sustained. He was not a holder for value as he had yet parted with nothing, and unless the note should ultimately be collected he was never to give anything for it. He does not say what the stock and merchandise, which he had agreed to give in case of the collection of the note, is, or how much of it he was to give. When the court upon this evidence left to the jury the question of *bona fides* it certainly did all that plaintiff could ask.

6. The defendant was allowed to testify that in his opinion the signature of Mrs. McCurday to the assignment of the contract was not genuine. The admission of this evidence is assigned as error. The proof shows that defendant had never seen Mrs. McCurday write, but he had sent her a letter which he says he thinks was addressed to Scotia, Ohio, and had received a letter in answer thereto which is in evidence. This letter is dated and postmarked "Otsego, Ohio, October 25." It contains a proposition by Mrs. McCurday to sign a relinquishment in consideration of the prompt payment of the $950 note. On November 20 the defendant addressed both the McCurdays, this time to Scioto, Ohio, enclosing for execution a quitclaim deed for the prop-

erty, which, on November 24, was returned with an indorsement apparently written by McCurday stating that the deed was enclosed, and there was enclosed therein a deed of quitclaim signed and acknowledged by both Mr. and Mrs. McCurday. The plaintiff in his deposition testifies that subsequently Mrs. McCurday stated to him that she had conducted such a correspondence with the defendant. It will be observed that while the letter from Mrs. McCurday did not come from the post-office to which defendant's letter was sent, nevertheless it was followed by other correspondence and was acted upon by her. This was sufficient proof of genuineness to support the defendant's testimony. The rule is thus stated by Patteson, J., in *Doe v. Suckermore*, 5 Ad. & E. [Eng.], 703: "The knowledge [rendering a witness competent to give his opinion as to the genuineness of a writing] may have been acquired by the witness having seen letters or other documents professing to be the handwriting of the party, and having afterwards communicated personally with the parties upon the contents of those letters or documents, or, having otherwise acted upon them by written answers, producing further correspondence, or acquiescence by the party in some matter to which they relate, or by the witness transacting with the party some business to which they relate, or by any other mode of communication between the party and the witness which, in the ordinary course of the transactions of life, induces a reasonable presumption that the letters or documents were the handwriting of the party." The proof in the case before us brings it directly within this rule, which is adopted by Greenleaf *in totidem verbis* (1 Greenleaf, Evidence, 577), and which has been frequently recognized in this country. (*Commonwealth v. Carey*, 19 Mass., 47; *Johnson v. Daverne*, 19 Johns. [N. Y.], 134; *Pinkham v. Cockell*, 77 Mich., 265.) The weight of such evidence must be very slight, but it is competent, and the credit to be given it is for the jury.

7. Another group of assignments of error relates to the evidence and instructions in regard to the attempted conveyances of the land and the measure of damages on behalf of the defendant. Recurring to the evidence upon these subjects, we find it clearly established that McCurday's interest was under a contract of sale assigned to him by the original vendee; that he was in possession and was occupying the premises as a homestead. In order to convey a homestead the instrument of conveyance must be executed and acknowledged by both husband and wife (Comp. Stats., ch. 36, sec. 4; and a court of equity will not decree the specific performance of a contract for the sale of a homestead unless the contract be executed and acknowledged by both husband and wife. (*Larson v. Butts*, 22 Neb., 370; *Clarke v. Koenig*, 36 Neb., 572.) It is undisputed that Mrs. McCurday did not acknowledge the instrument whereby McCurday undertook to assign his interest in the premises and contract to the defendant. No rights in the premises were, therefore, vested in the defendant under that assignment, and there was really no delivery of the assignment, such as it was. It was merely left with the defendant until Mrs. McCurday should come and acknowledge it, and the defendant gave plaintiff the note, relying upon his promise that such acknowledgment would be made. It was not made, and the defendant seems to have persistently endeavored to procure a proper conveyance for many months, finally receiving an instrument in form of a quitclaim deed. This was executed in Ohio and has no attesting witness. The certificate of acknowledgment has no county named in the venue, and it is at least doubtful whether that defect is supplied elsewhere in the certificate. It is probable, therefore, that no presumption attaches that the deed was executed in accordance with the laws of Ohio. But McCurday had no legal estate in the premises. What he undertook to convey was his rights under the executory contract for the purchase of the land. The property had by that time been

abandoned as a homestead, the McCurdays having permanently removed to Ohio, and a formal deed would not be necessary to transfer their interest as executory vendees. It is not necessary to here decide whether a deed having no attesting witness is sufficient to pass the legal title as between the parties thereto. The quitclaim deed, signed by the parties without witness or acknowledgment, was a sufficient memorandum to satisfy the requirements of the statute of frauds, and operated to transfer to the defendant in December what the plaintiff had undertaken to transfer in April. (*Missouri Valley Land Co. v. Bushnell*, 11 Neb., 196; *Blazier v. Johnson*, 11 Neb., 404.) The defendant seems to have objected at the time to the form of this conveyance, but he retained it; and while it does not appear clearly whether he ever was in possession of the premises, he acted upon the conveyance and subsequently sold his interest to a third person.

The defendant upon the trial proceeded upon the theory that he was entitled to set off against the note for the purchase money losses he sustained by reason of inability to carry out arrangements made for the resale of the land at a profit. He also undertook to set off expenses incurred in the way of interest upon incumbrances and taxes. Evidence was introduced tending to show that between April and December he had completed arrangements for selling the land at a considerable profit; that these arrangements fell through because of his inability to make title, and that in December, when he procured the quitclaim deed, persons holding the incumbrance had instituted an action to foreclose, and that because of the pendency of that proceeding he was unable then to sell; that he subsequently did dispose of the land, but the condition of the incumbrances was such that he obtained nothing out of the proceeds.

The instructions given by the court upon the measure of damages are couched in general terms, and, so far as they go, are free from objection; but the evidence referred to

was all objected to and its admission is assigned as error. The instructions of the court left the jury free to consider it. We do not think it was directed to the proper measure of damages in such a case. There is no evidence that, at the time the sale was made and the note delivered, McCurday knew that Rose was buying for the purpose of a resale. There is only evidence that McCurday suggested that the property might shortly afterwards be sold at a profit. There is no evidence that Rose then had a purchaser secured. It is shown that McCurday was afterwards informed that a portion of the land had been contracted to be sold, but applying the rule in *Hadley v. Baxendale*, we do not think that the loss of a prospective sale of the premises pending the delay was such a loss as can be considered as arising naturally from the breach of contract or such as might reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of its breach.

It has been held that in the case of the breach of an executory contract to convey real estate, where the vendor having title refuses or puts it beyond his power to convey and no part of the consideration has been paid, the measure of damages is the value of the land at the time the contract should have been performed less the contract price. (*Wasson v. Palmer*, 13 Neb., 376; *Carver v. Taylor*, 35 Neb., 429. See, also, *Dunshee v. Geoghegan*, 7 Utah, 113; *Muenchow v. Roberts*, 77 Wis., 520; *Pumpelly v. Phelps*, 40 N. Y., 59; *Allen v. Atkinson*, 21 Mich., 351; *Hopkins v. Lee*, 6 Wheat. [U. S.], 109.) The general principle of all these cases is that which controls the whole subject of damages in this state, to-wit, that actual fair compensation should be made. In *Sweem v. Steele*, 5 Ia., 352, it was held that the vendee should recover any increased value to the land to the time when the contract should have been performed. Applying the rule to this case, if there had been an enforceable executory contract made providing for a convey-

ance immediately thereafter and McCurday had refused to convey, Rose could have recovered only the difference be-tween the value of the land at that time and the purchase price agreed upon. If his contract had been to convey in December and he had then refused to do so, the measure of damages would have been the difference between the value in December and the contract price. He accepted the con-veyance in December, and following the analogy of the cases where there has been a refusal to convey, and applying the rule there laid down to this case, which amounts simply to a delay in the conveyance, the measure of damages would be the difference between the value of the land in April when it should have been conveyed, and its value in De-cember when it was conveyed. If the defendant was kept out of possession during these months, it would seem that the rental value of the land in the meantime should be added to the damages thus ascertained. There was no foundation in the evidence admitted for ascertaining the damages according to this rule, and the evidence which was admitted was directed to a false measure of damages.

In support of the rule of damages contended for by de-fendant we are cited to 1 Sutherland, Damages, 130; *Drake v. Baker*, 34 N. J. Law, 358; *Engel v. Fitch*, L. R. 3 Q. B. [Eng.], 314; s. c., L. R. 4 Q. B. [Eng.], 659. Suth-erland, at the place cited, lays down the proposition that a party injured by total breach is entitled to recover the profit of a particular contract which he shows with suffi-cient certainty would have accrued if the other party had performed. Here there was no total breach, merely delay. Sutherland cites a vast array of cases, but all of them, so far as we have been able to examine them, simply state the general rule of damages; *Hadley v. Baxendale*, 9 Exch. [Eng.], 341, being among the number and affording a fair illustration of the general principles from which Mr. Suth-erland has sought to deduce this particular rule. *Drake v. Baker*, *supra*, simply holds that the case of *Flureau v.*

*Thornhill,* 2 Wm. Bl. [Eng.], 1078, does not apply to the case of a failure to make title because of the wife's refusing to join in the deed, and that substantial damages may be in such case recovered, but no rule is laid down for determining those damages. In *Engel v. Fitch, supra,* it was certainly held that a vendee was entitled to recover the profits which he would have made upon a particular sale negotiated by him, and this was allowed upon the principle that the possibility of a resale is not beyond the contemplation of the parties, and that such damages came within the rule of *Hadley v. Baxendale, supra.* But upon appeal in exchequer chamber (L. R. 4 Q. B. [Eng.], 659) this judgment was affirmed, not upon this ground, but upon the ground that the measure of damages was the difference between the purchase price and the value at the time of the breach. This is clear from the following language: "If the contract had been carried out he would have been possessed of property of the increased value of 105 pounds. It follows that he is entitled to damages to that amount. Not, I repeat, because he happens to have made such a good bargain of resale, but because, as the case is put before us, we must take this bargain as evidence of the market value, no contrary evidence having been given." This case supports the view we have taken, but the portion of it making the purchase price at the resale evidence of market value is not applicable to the case before us, for here the defendant's bargain of resale was made during the period of delay and afforded no criterion as to the market value at the time title was made. It may then have been much greater, in which case defendant would suffer no damage; and the mere fact that a foreclosure suit, in which defendant then obtained a right to redeem, was pending, and that fact prevented a resale at that time, does not go to the market value.

REVERSED AND REMANDED.