KERREY CONSTRUCTION COMPANY, APPELLEE, V. WILMER A. HUNT ET AL., APPELLANTS.

331 N.W.2d 519

Filed March 25, 1983. No. 81-732.

Randal B. Brown, for appellants.

Rollin R. Bailey of Bailey, Polsky, Cada & Todd, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

WHITE, J.

This is an action brought by Kerrey Construction Company, a Nebraska corporation, plaintiff-appellee, against Wilmer A. and Marcella R. Hunt, husband and wife, defendants-appellants, to recover damages for the breach of a written real estate purchase agreement executed on March 9, 1978, and later modified on March 9 and 11, 1978. At the conclusion of the trial the jury returned a verdict of

$35,000 for Kerrey Construction Company. The Hunts appeal, raising several assignments of error. We affirm.

The Hunts are the owners of a tract of land of approximately 12½ acres, located at Lot 11 of Irregular Tracts in the southeast quarter of the southwest quarter of Section 11, Township 9 North, Range 6 East of the 6th P.M., Lincoln, Lancaster County, Nebraska. Mr. Hunt is a deputy city engineer for the city of Lincoln, Nebraska.

Kerrey Construction Company is a family corporation, with James H. Kerrey and his son John Kerrey as the principal officers. John Kerrey is also a licensed real estate broker, and at the time the contract was signed he was an employee of Re/Max realty company, a member of the Multiple Listing Service.

The Hunts (sellers) listed their land for sale with Austin Realty Co., a member of the Multiple Listing Service.

On February 10, 1978, John Kerrey, acting on behalf of Kerrey Construction Company (buyer), submitted a written real estate purchase offer for sellers' property to Ronald Tonniges, sellers' agent at Austin Realty Co. Under the multiple listing arrangement, Austin Realty was to act as the listing agent and Re/Max was to act as the selling agent. Both agents were to share in commission from the sale.

Tonniges presented the offer to the sellers, and they rejected it on February 11, 1978. Three other written offers were subsequently submitted to the sellers by buyer, and all were rejected. After the last offer was turned down buyer proposed that Tonniges might be able to get together with sellers and prepare a contract that would be satisfactory.

Tonniges, working with the sellers, prepared a contract on March 9, 1978, on the same "Offer to Purchase" multiple listing form that had been used

in all the previous offers from buyer. The signed proposal contained a typed provision which stated, "This counter-offer is to be null and void if not signed by the buyer and returned to Austin Realty before Saturday March 11, 1978 at 5:00 P.M." Re/Max was listed as the selling agent, with a total price of $105,000 for the land and $5,000 of the total to be paid down by check. Closing was to take place on June 1, 1978.

On March 11, 1978, the sellers' proposal was delivered to John Kerrey who, on behalf of buyer, executed a $5,000 check for the downpayment. Then, on behalf of Re/Max, John Kerrey signed a receipt for the $5,000 check and placed it in a desk drawer at the Re/Max office.

Buyer crossed out sellers' request in the form for a specific name to be given to a street in the new development, and also added that buyer's officers were licensed real estate salesmen. Buyer signed and returned the proposal to Tonniges before the deadline. Sellers approved the changes, and on March 15, 1978, returned the contract, with the acceptance receipt signed on the back. Buyer also signed at the place designated on the contract which specified that it had received it, and proceeded to deliver the $5,000 check to Re/Max, with the completed contract.

After the modified contract had been signed buyer contacted Bill Kennedy, a coworker at Re/Max, to see if he might know of anyone interested in developing the land. Kennedy contacted James Christo of Christo Construction Company, and a purchase agreement was signed on March 21, 1978, between John Kerrey and Christo on behalf of their respective companies. Christo agreed to pay $4,000, plus 1/60th of the amenities for each of 60 townhouse sites, or a total of $240,000 for the same land buyer was purchasing from sellers for $105,000.

The buyer had retained the services of an engi-

neering and architectural firm to prepare estimates and the layouts of the proposed construction site.

Shortly before closing was to take place, the buyer's attorney examined the abstract of the property furnished by the sellers and determined that the property was unmarketable since the actual metes and bounds of the tract were not described. The title problem was relayed to Tonniges, who informed sellers that the sale could not be closed on June 1 unless the title problem was remedied.

On June 5, 1978, sellers wrote a letter to the buyer and Austin Realty, stating that the contract had been terminated: ''Your violation consisted of failing to close on the purchase of the contract on June 1, 1978, advising my realtors that you did not have the money to close.''

Upon receipt of the letter buyer's attorney informed sellers that, in his opinion, title was not marketable but that his client was still interested in completing the contract once title was cleared. Additional correspondence occurred during the summer, with no further development between the parties.

On August 13, 1978, buyer wrote sellers a check for $99,828.51 and signed a closing statement, both of which were delivered to Austin Realty, the listing agent. On August 14, 1978, the attorney for buyer wrote a letter to the sellers reaffirming that buyer was ready to perform and was waiving all title defects. The letter also stated that buyer had sold the land to a third party for $240,000 and that if sellers refused to close the transaction by noon on August 16, 1978, an action for damages would be instituted against them.

Sellers refused to close on the new date specified by buyer's attorney. On August 30, 1978, Christo Construction Company· wrote a letter to buyer canceling its agreement to purchase the property because buyer was not able to obtain the land.

Buyer filed suit and trial was had. At the conclu-

sion of the trial the court instructed the jury, and the jury returned a verdict of $35,000 for Kerrey Construction Company.

The Hunts raised several defenses at trial: (1) That Kerrey Construction did not accept their counteroffer by March 11, 1978, and therefore the offer was null and void; (2) that there was no consideration because of the failure of Kerrey Construction to have its check certified; and (3) that John Kerrey violated his fiduciary duty to the Hunts because he induced them to accept $105,000 for the land when he knew it was worth more. These factual issues were disputed at trial, properly submitted on instructions, and the jury found against the Hunts on each defense by finding that a breach had occurred. Although not specifically assigned as error, the Hunts appear to be attempting to reargue the factual findings of the jury, in addition to the assignments of error set forth in their brief. There was sufficient evidence presented, and therefore we do not quarrel with the decision of the jury in this case finding that a breach had occurred and its resolution of the other factual issues presented.

This opinion will therefore discuss only whether the trial court erred in submitting the loss of Kerrey Construction Company's resale contract to the jury as an element of damages in this case. We find the Hunts' other assignments of error relating to the trial court's failure to give proposed instructions and failure to grant a motion for judgment notwithstanding the verdict to be unmeritorious.

The general measure of damages for a breach of contract to convey land is the market value at the time of breach less the contract price. *Hahn v. International Management Services, Inc.*, 207 Neb. 229, 298 N.W.2d 140 (1980); *Oman v. City of Wayne*, 152 Neb. 341, 40 N.W.2d 916 (1950). The exception to this rule is that where it appears that special damages have also arisen from the breach, the damages recoverable are such as may fairly and reasonably

be supposed to have been in the contemplation of the parties at the time the contract was made. *Violet v. Rose,* 39 Neb. 660, 58 N.W. 216 (1894); *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145 (1854); Restatement (Second) of Contracts § 351 (1981).

Kerrey Construction maintained throughout trial that it was entitled to receive lost profits because of its inability to complete the arrangements it had made for the resale of the land at a profit. Evidence at trial showed that after the contract was signed between Kerrey Construction and the Hunts, Kerrey Construction had arranged to sell the land to Christo Construction Company for a considerable profit. The sole reason that these arrangements fell through appears to have been the inability to procure title from the Hunts.

The trial court proceeded to give instructions upon the measure of damages, couched in the specific terms of the loss of the resale bargain, and the issue of general damages was not presented to the jury.

We are unable to say upon the facts of this case that, as a matter of law, the damages caused by the loss of the resale contract were not within the contemplation of the parties at the time they entered into the contract. There was evidence presented that the Hunts knew they were conveying to a construction company whose principal officers were real estate agents. Mr. Hunt was the city engineer of Lincoln, was very familiar with land development, and even provided Kerrey Construction with several maps as to how the tract could be developed.

While it may or may not have been reasonable to assume that the Hunts thought Kerrey Construction would develop and build on the land, selling it parcel by parcel rather than contracting to sell the entire tract to a third party, the issue was properly submitted to the jury and a verdict was returned against the Hunts. Applying the rule in *Hadley v. Baxendale, supra,* we believe that the loss of a prospective sale of land can be considered as arising

naturally from the breach of contract in this case and that a prospective sale can reasonably be supposed to have been in the contemplation of both parties at the time they made the contract. Any language in *Violet v. Rose, supra,* inconsistent with this opinion is hereby overruled.

Therefore, we find that the trial court was correct in admitting evidence regarding the resale contract with Christo Construction Company and submitting the issue of special damages to the jury.

AFFIRMED.

CLINTON, J., not participating.