TIMOTHY W. TURNER AND JEANNIE L. TURNER, APPELLANTS AND CROSS-APPELLEES, v. RODNEY ALBERTS, APPELLEE AND CROSS-APPELLANT.

399 N.W.2d 817

Filed January 30, 1987.    No. 86-184.

John F. Simmons of Wright, Simmons & Selzer, for appellants.

Richard A. Douglas of Winner, Nichols, Douglas, Kelly and Arfmann, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This is an appeal from an order of the district court for Scotts Bluff County affirming the judgment of the county court. Plaintiffs-appellants, Timothy W. and Jeannie L. Turner, husband and wife (hereinafter collectively referred to as Turner), brought an action in county court seeking damages of $8,741.10 in connection with the sale of their residence to defendant-appellee, Rodney Alberts. After a trial to the court, the county judge found for Turner and awarded damages of $1,716.62. Turner appealed to the district court, where the judgment and amount of damages were affirmed. Turner timely appealed to this court, and Alberts has cross-appealed.

Turner assigns as error the action of the trial court, affirmed by the district court, in failing to allow certain late charges as damages and in determining the evidence did not permit the court to ascertain which portion of the mortgage payments made by Turner after Alberts defaulted constituted recoverable damages. Alberts, in his cross-appeal, assigns as error the action of the district court in affirming the county court's judgment, which failed to find that Turner's exercise of a forfeiture right was an exclusive right, thereby precluding an action for damages. For reasons hereinafter stated, the order of the district court is reversed.

Evidence adduced at trial reveals the following. On August 20, 1981, Turner and Alberts entered into a written agreement under which Turner agreed to sell the Turner residence to Alberts for the sum of $65,000. No real estate agent was engaged in connection with this contract. The contract called for a downpayment in the amount of $4,000, due at the time of execution of the contract. The remaining balance was to be paid in 36 monthly installments equaling Turner's monthly mortgage payments, including escrow payments for taxes and insurance, plus a balloon payment on September 1, 1984, of "the entire remaining principal balance, with accumulated interest . . . ." The contract also contained a forfeiture clause, which provided that in the event Alberts failed to make the monthly payment within 7 days of the date when it was due, Turner would be entitled to declare a forfeiture of the Alberts interest in the property, and a further clause stating, "In addition to the rights

specified hereunder, TURNER shall have all other rights allowable in law or equity."

Pursuant to the contract, at the time of conveyance Turner delivered to the escrow agent a warranty deed conveying the property from Turner to Alberts, and at the same time Alberts delivered to the agent a quitclaim deed which would reconvey the property to Turner in the event Alberts did not make the payments due and Turner declared a forfeiture. The contract further provided, "All payments made by ALBERTS under this contract under such circumstances shall be considered as rent of the property and shall not be refunded to him [Alberts]."

Alberts made the $4,000 downpayment as called for in the contract and took possession of the residence. Payments for the months of September 1981 through March 1982 were made without incident. In late March of 1982, Alberts was notified by Turner that his monthly payment would be increasing due to an increase in insurance premiums. Shortly thereafter, on April 7, 1982, Alberts decided to move out of the house. At this time the Turners were living in Omaha, Nebraska. Mrs. Turner was visiting Scottsbluff when she heard Alberts was leaving the house. When Mrs. Turner questioned Alberts concerning leaving the house, he replied, "I'm moving. I'm gonna let the house — I'm just gonna let it go." Alberts moved from the residence without making the April 1982 payment.

On April 13, 1982, after the 7-day deadline of the forfeiture provision had passed, Turner sent a letter to the escrow agent notifying it of their intention to declare a forfeiture. The letter read in part, "This letter is notice to you that we have elected to declare such a forfeiture." The letter also demanded that the escrow agent deliver both deeds to Turner's attorney pursuant to the declaration of a forfeiture. The deeds were returned to the attorney.

Turner resumed making the monthly payment to the mortgage holder. The April, May, June, and July 1982 payments were made promptly. Turner failed to make the August, September, and October payments until the house was resold in November of 1982. In addition, as a result of these payments' being late, penalty charges were assessed Turner.

The house was resold in November of 1982, for $65,500. In addition to resuming the monthly payments, Turner paid the utilities during the interval before resale, as well as certain repair charges which Turner alleged were required because of damages Alberts caused to the house.

After the resale, Turner brought this action in county court alleging that damages of $12,741.10 had occurred as a result of Alberts' not completing the purchase. That sum included the real estate commission on the resale, mortgage payments, late charges on mortgage payments, electricity and water bills, real estate taxes, additional interest, telephone bills, a telegram, "House Clean Up," and "Labor and Materials in Clean Up." Turner also pled that Alberts was "entitled to a credit for the $4,000.00 down payment which the Defendant made and which the Plaintiffs retained," and prayed for $8,741.10 as damages. Alberts answered by a general denial and the affirmative defense that Turner had waived any right to recover damages by electing "to utilize the quitclaim deed held in escrow."

After trial, the county court found for Turner and allowed as damages the repair and labor costs, realtor's fees and title insurance incurred in the resale, utility costs, and additional interest, totaling $6,216.62. Damages for the mortgage payments were denied, with the court reasoning that it was not properly shown what part of the mortgage payments constituted recoverable interest payments versus nonrecoverable reduction on principal. After the court calculated the damages, the court applied the credits of $4,000 for the downpayment (as pled by Turner) and $500 "for the reason that Plaintiff resold the property for $65,500," and entered judgment for Turner in the amount of $1,716.62. Turner appealed to the district court for Scotts Bluff County, where the decision of the county court was affirmed.

The general measure of damages for a breach of contract to convey land is the difference between the market value of the land at the time of the breach and the price set out in the contract. *Kerrey Constr. Co. v. Hunt*, 213 Neb. 776, 331 N.W.2d 519 (1983); *Hahn v. International Management Services, Inc.*, 207 Neb. 229, 298 N.W.2d 140 (1980); *Oman v. City of Wayne*, 152 Neb. 341, 40 N.W.2d 916 (1950). That

general rule, as shown by the cited cases, applies to situations where either the vendor or the vendee seeks damages after a breach.

In *Kerrey Constr. Co. v. Hunt, supra,* a case in which the vendee sought damages after the vendors' breach, an exception to that general rule was stated at 780-81, 331 N.W.2d at 521: "The exception to this rule is that where it appears that special damages have also arisen from the breach, the damages recoverable are such as may fairly and reasonably be supposed to have been in the contemplation of the parties at the time the contract was made." We hold that that exception to the general rule should also apply to cases where the vendor seeks damages after a vendee's breach, such as in this case.

Applying the rules, however, in the case at bar results in some difficulty. If the general rule is to be applied, Turner is entitled to no damages. Turner did not plead nor was there any direct evidence offered as to the value of the property at the time of Alberts' breach of contract. The evidence showed, however, and the court found, that the property was sold 7 months after the breach, for an amount $500 in excess of the contract price. It is clear that application of the general rule would not result in the award of any damages to the plaintiff.

Application of the exception to the general rule avails Turner little more. Plaintiff did not prove that the special damages sought could "fairly and reasonably be supposed to have been in the contemplation of the parties at the time the contract was made." The contract itself, however, shows that responsibility for repairs to the house was that of Alberts, and therefore, clearly, damages for repairs were in the contemplation of the parties. In that connection, the contract provided, in § 6 thereof:

> ALBERTS will keep the premises in good condition, will make all repairs seasonable, and will undertake no action which will create a lien upon the premises. ALBERTS will make no structural modifications to the premises without the prior written consent of TURNER. The parties recite that the house located on the premises contains radiant heat in the ceiling and that any fixtures attached to the ceiling might cause damage to the house.

The trial court found that the costs of repair were $586.34. The evidence clearly supports that amount, and it was properly allowed to Turner as damages.

With regard to the other damages allowed, as stated above, there was no evidence that such damages were in the contemplation of the parties when the contract was signed. Instead, the contract set out a precise method whereby Turner would legally obtain Alberts' quitclaim deed and thus return Turner to the position of owner of the premises and remove the claim of Alberts to the property. The contract required that Alberts, in the event of any failure to make the required payments and at the demand of Turner, would "peaceably vacate the premises immediately." Alberts did so. At that point, Turner had title to, and possession of, the house. It was Turner's to do with as they wished. In the absence of any other showing, Alberts had no right in the premises and no obligation other than that imposed on him by the contract between the parties. Under the facts as pled and proved by plaintiffs, the evidence not only does not support any additional damages for Turner on this appeal but shows directly that since Turner has pled that Alberts is entitled to a credit for his $4,000 downpayment, Turner is certainly not entitled to any further damages from Alberts in this lawsuit. The judgment for an additional $1,716.62 in Turner's favor must be set aside.

Alberts, at the trial of this matter, testified, with regard to his $4,000 downpayment, that he was agreeable to forfeiting that amount "as a liquidated damage." His pleadings supported that approach, and he sought the disposition of the case on that basis. Since the case is disposed of in the manner which Alberts sought, we need not determine the issues presented by Alberts' cross-appeal, which seeks the same result.

The cause is remanded to the district court with directions to return the case to the county court, where judgment should be entered for defendant Alberts on Turner's amended petition. Costs are taxed to appellants Turner.

REVERSED AND REMANDED WITH DIRECTIONS.

KRIVOSHA, C.J., concurs in the result.