**INDUSTRY FINANCIAL CORPORATION, Plaintiff and Appellant,**

v.

**David H. REDMAN and Esther Redman, Defendants and Appellees.**

Civ. No. 11067.

Supreme Court of North Dakota.

March 19, 1986.

Kapsner & Smith, Bismarck, for plaintiff and appellant; argued by Sheldon A. Smith.

Rosenberg & Baird, Bismarck, for defendants and appellees; argued by Max D. Rosenberg.

LEVINE, Justice.

Industry Financial Corporation (IFC) appeals from summary judgment in its favor for $20,424.31. At issue is the trial court's interpretation of two leases. We affirm.

In 1980 David H. Redman and Esther Redman agreed to rent a combine and tractor from Quincy Midwest Leasing, Inc., and executed two five-year leases. Quincy subsequently assigned the leases to IFC. In 1983 the Redmans defaulted on their rental payments. Pursuant to an agreement between the parties, the combine and tractor were sold and IFC received the proceeds.

IFC then sued the Redmans to recover the sum of $35,773.08, a portion of the remaining rent.

IFC moved for summary judgment and the trial court awarded IFC judgment for $20,424.31.

On appeal, IFC contends that the trial court misinterpreted the default provision of the leases and thus awarded IFC less than it was entitled to. The Redmans defend the trial court's interpretation and request affirmance. Neither party argues that the leases are ambiguous.

■ The trial court's interpretation of the leases to determine their legal effect is a question of law, fully reviewable on appeal. *Miller v. Schwartz*, 354 N.W.2d 685 (N.D.1984). We thus independently examine and construe the leases to determine if the trial court erred in its interpretation. *Miller v. Schwartz, supra* at 688.

Paragraph 9 of the leases reads in pertinent part:

"9. **DEFAULT:** ... In the event of a breach of this lease ...: (a) the equipment shall upon [IFC's] demand forthwith be delivered to [IFC] ... and (b) all sums due and to become due hereafter shall, at [IFC's] option, become payable forthwith, and [IFC], in addition to being entitled to take possession of the equipment as hereinbefore described, also shall be entitled to recover immediately as and for damages for the breach of this lease and not as a penalty, an amount equal to the difference between the aggregate rent reserved hereunder for the unexpired term of the lease (hereinafter called 'Remaining Rentals') and the then aggregate rental value of all equipment for the unexpired term of the lease (hereinafter called 'Unexpired Rental Value of Equipment').... [IFC] upon any breach of this lease may sell the equipment or may re-lease such equipment ... and any proceeds of such sale ... or any rental payments received under a new lease ... shall be deemed and considered for the purposes of this paragraph as being the Unexpired Rental Value of Equipment...."

Under paragraph 9, IFC is entitled to the equipment, to the acceleration of all sums due, and to damages. While paragraph 9 is at the heart of this dispute, paragraph 13 also has bearing. Paragraph 13 provides:

"13. **LEASE IRREVOCABILITY:** This lease is irrevocable for the full term hereof and for the aggregate rentals hereinabove reserved and the rent shall not abate by reason of termination of Lessee's right of possession and/or the taking of possession by the Lessor or for any other reason, and delinquent installments of rent shall bear interest at the highest lawful contract rate or 1 percent per month, whichever be the lesser."

■ Paragraph 13 thus provides for unabated rent with no mitigation. Standing alone, it imposes no obligation upon IFC to mitigate its losses by applying the proceeds from a sale or reletting of the equipment to reduce the Redmans' liability for the remaining rent. Such a provision in a lease permits double recovery and, by itself, would be void and unenforceable as a penalty. North Dakota Century Code §§ 9–08–03 and 9–08–04; *Southwest Park Outpatient Surgery, Ltd. v. Chandler*, 572 S.W.2d 53 (Tex.Civ.App.1978); *Fairfield Lease Corp. v. Marsi Dress Corp.*, 60 Misc.2d 363, 303 N.Y.S.2d 179 (N.Y.Civ.Ct. 1969).

■ But, it is our duty to interpret paragraphs 9 and 13 in conjunction, NDCC § 9–07–06, and insofar as consonant with the intention of the parties, in a manner that will render the leases reasonable and lawful. NDCC § 9–07–08.

Paragraph 9 rectifies the penalty flaw of paragraph 13 by factoring a mitigation component into its formula for computing damages.

Paragraph 9 defines damages as an amount equal to the difference between the remaining rent owed by the Redmans of $47,170.00, which is undisputed, and the "Unexpired Rental Value" of the combine and tractor. The "Unexpired Rental Value" of the equipment is defined as the

amount of the proceeds from the sale of the combine and tractor, less expenses, which is $26,745.69. The difference between the remaining rent, $47,170.00, and the "Unexpired Rental Value," $26,745.69, is $20,424.31, which is the amount of damages granted to IFC by the leases.

Thus, paragraph 9 eliminates the specter of double recovery because it subtracts from the remaining rent owed the amount derived from the sale of the equipment, thereby effecting a mitigation of IFC's damages. In addition to the damages of $20,424.31, IFC is entitled to retain the sale proceeds of $26,745.69. The sum of the damages, the sale proceeds and the $70,-755.00 in rent paid prior to the default is $117,925.00, which equals what IFC would have earned absent the Redmans' default.[1]

Our interpretation renders the leases lawful and results in an award of damages which bears a reasonable relationship to the actual detriment suffered by IFC due to the Redmans' default. NDCC §§ 32-03-09, 32-03-36, 32-03-37. It is also consistent with the trial court's award of $20,-424.31.

Accordingly, the judgment is affirmed.

ERICKSTAD, C.J., MESCHKE and VANDE WALLE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of GIERKE, J., disqualified.

---

**1.** Had there been no default, IFC, in addition to the $117,925.00 in rent, would also have possession of the equipment, provided the Redmans did not exercise their purchase option. However, IFC elected to sell the equipment rather than to retain possession or relet it.