Wilbur L. FISHER a/k/a Wilbur Fisher, Plaintiff, Appellant and Cross–Appellee,

v.

Don SCHMELING, individually and as a partner of Continental Real Estate, a partnership; Continental Real Estate, a partnership, Defendants and Appellees,

Elmer Dukart and Louise Dukart, Defendants, Appellees and Cross–Appellants.

Civ. No. 930350.

Supreme Court of North Dakota.

Aug. 24, 1994.

Vince H. Ficek, Reichert, Buresh, Herauf & Ficek, PC, Dickinson, for plaintiff, appellant and cross-appellee Wilbur L. Fisher.

Gary R. Wolberg, Fleck, Mather & Strutz, Bismarck, for defendants and appellees, Don Schmeling and Continental Real Estate.

Michael J. Maus; Howe, Hardy, Galloway & Maus, PC, Dickinson, for defendants, appellees and cross-appellants, Elmer and Louise Dukart.

VANDE WALLE, Chief Justice.

Wilbur Fisher appealed from a district court judgment dismissing his action against defendants Don Schmeling, Continental Real Estate (Continental), and Elmer and Louise Dukart (the Dukarts), arising out of a failed real estate transaction; Fisher sought to recover earnest money in the amount of $33,-000 which he had paid to the defendants, plus $10,000 in unspecified damages. The court also dismissed a counterclaim by the Dukarts, who sought recovery of actual damages allegedly sustained as a result of the failed transaction, in excess of the $33,000 award. We affirm as to both matters.

The Dukarts were record title owners of ranch property in Stark County, North Dakota. Desiring to sell the property, the Dukarts entered into an Exclusive Right to Sell Agreement with Continental.

Fisher, a California resident who had been contemplating purchasing various ranch properties upon which he planned to retire, learned of the Dukart property through an advertisement. Fisher contacted defendant Don Schmeling, a real estate broker and partner in Continental. Schmeling provided Fisher with information relevant to the Dukart property and the terms and conditions of purchase. In February 1992, Schmeling and Fisher personally toured and inspected the Dukart ranch.

On March 5, 1992, Fisher agreed to purchase a portion of the Dukart property for $117,000, with earnest money in the amount of $5,000 to be paid on March 5, and addi-

tional earnest money in the amount of $15,-000 to be paid on March 20, 1992. Fisher paid the $20,000 earnest money pursuant to the terms of the agreement.[1]

Under a second agreement, dated April 2, 1992, Fisher agreed to purchase additional acreage from the Dukarts for a purchase price of $83,000, with an earnest money requirement of $13,000. Fisher had requested that the Dukarts waive the earnest money requirement, in light of his payment of $20,-000 under the first purchase agreement. The Dukarts rejected Fisher's proposal, however, and Fisher paid the Dukarts the additional sum.

Regarding the earnest money, both purchase agreements contained the following liquidated damages provision:

"In the event the Seller performs all his obligations after acceptance and the purchaser shall fail to consummate the purchase, by the dates specified in paragraph 5 above, the Seller shall be paid the earnest money so held in escrow as liquidated damages for such failure to consummate the purchase, without prejudice to other rights and legal remedies...."

On May 18, 1992, prior to the closing date for the sale of the property, Fisher informed Schmeling that he would not purchase the Dukart property, due to circumstances beyond his control. In a letter dated May 19, 1992, Fisher explained to Schmeling that an accounting error was recently discovered, revealing that he owes $41,000 in back taxes. Because of this unforeseen occurrence, Fisher explained, he was not able to afford the purchase of the Dukart property. Fisher demanded that Schmeling return the earnest money, totaling $33,000, because "this sale was contingent upon me obtaining satisfactory financing."

During a period from July 17, 1992, through January 11, 1993, the Dukarts resold most of the ranch property, and only one quarter section of land remains in the Du-

---

1. Fisher originally agreed to purchase the Dukart property for a price of $200,000, with a $20,000 earnest money requirement, but the Dukarts rejected the proposal. When Fisher agreed to purchase a smaller portion of the estate for a price of $117,000, the parties agreed to the $20,000 earnest money figure.

karts' ownership. The $33,000 is being held by Schmeling in an escrow account.

Fisher brought suit in district court to recover the earnest money. Among other assertions, Fisher contended that Schmeling did not adequately disclose to him the extent of a leafy spurge problem, the existence of mortgages on the property, and the Dukarts' ownership of mineral rights to the property. Fisher thus sought rescission of the contract. In addition to the $33,000, Fisher sought damages for Schmeling's allegedly improper retention of the money.

The Dukarts counterclaimed, seeking the earnest money or, alternatively, actual damages for breach of contract, should such damages exceed $33,000. Upon a trial to the court, the court dismissed Fisher's action and awarded the Dukarts the $33,000 earnest money as liquidated damages. The court dismissed the Dukarts' counterclaim for actual damages, concluding that liquidated damages were an exclusive remedy under the contract.

Fisher raises two issues on appeal: whether the liquidated damages provisions of the purchase agreements are void under North Dakota law, and whether the district court's finding that Fisher breached the purchase agreements was clearly erroneous. The Dukarts, on cross-appeal, raise the question of whether liquidated damages are an exclusive remedy under the purchase agreements, or whether they may be permitted to prove actual damages in excess of the liquidated damages sum.

## I.

Fisher argues that the earnest money provisions and liquidated damages provisions of the purchase agreements constitute a penalty and are void under North Dakota law. Upon review of the record, we disagree.

■ A party seeking to enforce a liquidated damages provision bears the burden of establishing its validity. *E.g., Coldwell Banker v. Meide & Son, Inc.*, 422 N.W.2d 375 (N.D.1988). Contractual clauses which impose penalties for nonperformance are void. NDCC § 9–08–03. As a general rule, a contractual provision fixing damages also is

invalid. NDCC § 9–08–04. However, under section 9–08–04, NDCC, "the parties may agree therein upon an amount presumed to be the damage sustained by a breach in cases where it would be impracticable or extremely difficult to fix the actual damage."

■ Regarding the determination of whether a liquidated damages provision is valid or is, in fact, a penalty, we have observed,

"three 'foundational facts' have emerged as critical to the inquiry whether a particular provision is a valid liquidated damages clause or a void penalty: 1) Were the damages upon breach very difficult to estimate at the time the contract was entered?; 2) Was there a reasonable endeavor by the parties to fix compensation?; and, 3) Does the amount stipulated bear a reasonable relationship to the damages reasonably to be anticipated upon breach?" *City of Fargo v. Case Development Co.*, 401 N.W.2d 529, 531 (N.D.1987).

Whether these "foundational facts" have been established is a question of fact to be resolved by the finder of fact. *Coldwell Banker, supra.* The district court found that the Dukarts met their burden in establishing the foundational facts. We review findings of fact under the clearly erroneous standard. Rule 52(a), NDRCivP. *Coldwell Banker, supra.*

The three factors we identified in *City of Fargo v. Case Development Co., supra,* are not necessarily mutually exclusive. Thus, where, as here, there is a bona fide reasonable endeavor to negotiate the earnest money and liquidated damages provisions, that fact may affect our consideration of whether the damages for breach were difficult to estimate at the time the contract was entered into. Where there are significant negotiations as to the liquidated damages provisions of the contract, we are less concerned with whether or not the actual damages are impracticable or extremely difficult to estimate, especially when considered with the third factor, that the stipulated damages bear a reasonable relationship to the reasonably anticipated damages on breach, as discussed below. The contracts at issue were clearly the result of

bargaining. They are not contracts of adhesion.

As a policy, we encourage amicable resolution of disputes between parties; we extol resolution of disputes by alternative methods, i.e., other than by traditional recourse to the courts. It is counter-productive to this policy to discourage contracts in which the parties have, in good faith, negotiated the results should a breach occur.

Section 9–08–04, NDCC, which is derived from the original California Civil Code, sections 1670 and 1671, was significant at a time when contracts of adhesion were more common. The modern trend appears to be to uphold reasonable liquidated damages clauses in other than adhesion contracts. *City of Fargo v. Case Development Co.*, 401 N.W.2d at 533, n. 3. Although our statute has not been amended to clearly reflect the modern trend, we nevertheless construe it to be receptive to the interests of those who, in good faith, endeavor to avoid the traditional recourse to the court system by negotiating liquidated damages provisions. We therefore place heavy emphasis on the difficulty of estimating damages in instances where there has been little negotiation of the liquidated damages clause, and less emphasis on that factor where there have been bona fide reasonable negotiations as to the clause.

Here, Fisher contends that damages for breach were not difficult to estimate. Fisher argues that because section 32–03–14, NDCC, provides a measure for computing damages for a breach of contract for the purchase of real estate, there can never be extreme difficulty in estimating damages. That section provides:

"32–03–14. Damages for Breach of Agreement to Buy Realty. The detriment caused by the breach of an agreement to purchase an estate in real property is deemed to be the excess, if any, of the amount which would have been due to the seller under the contract over the value of the property."

Fisher asserts that, as a matter of law, the district court's finding that damages for breach were extremely difficult to estimate at the time of contracting was clearly erroneous. *See* 22 Am.Jur.2d *Damages*, § 700

(1988) ["a liquidated damages clause violates a statute declaring that such clauses are void unless it would be impracticable or extremely difficult to fix actual damages, where another statute specifies the measure of damages applicable to the particular breach"]; *Reid v. Auxier*, 690 P.2d 1057 (Okl.App.1984).

Section 32–03–14, NDCC, provides a method for generally measuring damages for breach of contracts for the purchase of real estate. *C.f. Missouri Slope Livestock Auction, Inc. v. Wachter*, 107 N.W.2d 349 (N.D. 1961). However, that section does not prohibit parties from establishing an alternative measure of liquidated damages for breach. *See Gordon v. Pfab*, 246 N.W.2d 283 (Iowa 1976) [upholding award of liquidated damages for "any expenses incurred by the Seller", including broker's commission, despite fact that the measure of damages for breach of real estate contract is the difference between the fair market value of the property at the time of the breach and the contract price]; *cf. Turner v. Alberts*, 224 Neb. 632, 399 N.W.2d 817 (1987); *Kerrey Const. Co. v. Hunt*, 213 Neb. 776, 331 N.W.2d 519, 521 (1983) [despite general rule that damages for breach of real estate contract are the difference between the contract price and the market value, special damages "as may fairly and reasonably be supposed to have been in the contemplation of the parties at the time the contract was made" may also be recoverable]; *McNeal v. Touri*, 107 Mich.App. 141, 309 N.W.2d 588 (1981) [if it was reasonably foreseeable that breach by purchaser would cause the seller to incur additional expenses, including real estate commission to resell property, seller may be entitled to recover the amount of commission as consequential damages].

Here, the district court found that the liquidated damages provision covered such anticipated damages to the Dukarts as the costs of removal of cattle, removal of personal property, and application of herbicides. The district court thus determined that the parties had agreed to liquidated damages estimating those damages that may be caused to the Dukarts *beyond* those measured by section 32–03–14, NDCC. Section 32–03–14 does not purport to include those

damages and does not prohibit the parties from reaching an agreement as to those damages. Because such damages may indeed be impracticable or extremely difficult to estimate at the time of the contract, we reject the contention that liquidated damages in this contract for the sale of real estate are, as a matter of law, void. Furthermore, upon review of the record in this instance, and mindful of the negotiations concerning the earnest money and liquidated damages provisions, we are not left with a firm and definite conviction that the district court erred in finding that damages would be extremely difficult to estimate.

Next, Fisher contends that the liquidated damages provision is void because the parties did not make a reasonable effort to fix compensation. See City of Fargo v. Case Development Co., supra. As we have discussed, the terms and amounts of the earnest money and liquidated damages provisions were negotiated in good faith. Fisher, following these negotiations, agreed to the terms. The district court's finding that the parties made a reasonable effort to fix compensation is not clearly erroneous. See Heikkila v. Carver, 378 N.W.2d 214 (S.D.1985).

Finally, Fisher asserts that the liquidated damages provision is void because it does not bear a reasonable relationship to the damages reasonably anticipated upon breach. See City of Fargo v. Case Development Co., supra. The Dukarts produced evidence that their damages were in excess of $40,000. The district court determined that these damages could have been anticipated prior to breach and that the liquidated damages bore a reasonable relationship to those damages. This finding is not clearly erroneous. We affirm the district court's determination regarding the validity of the liquidated damages provision.

## II.

Fisher also contends that the trial court erred in concluding that Fisher had breached the purchase agreements. Fisher argues that it was permissible for him to rescind the contracts, because the parties had agreed that the purchase of the property was contingent upon the sale of Fisher's property in California, an event which had not yet taken place when Fisher terminated the contract. Also, among other assertions, Fisher alleges that the property was so infested with leafy spurge as to warrant rescission and that Schmeling misrepresented to Fisher the number of cattle that could be carried on the estate.

■ The district court found Fisher's allegations to be without support in the record and that there was no basis for rescission of the purchase agreements. See NDCC § 9–09–02. Our review is limited by the clearly erroneous standard of Rule 52(a), NDRCivP. Kopperud v. Reilly, 453 N.W.2d 598 (N.D. 1990). We have reviewed the record and conclude that the district court's findings are not clearly erroneous.

## III.

The Dukarts assert that, although they were awarded liquidated damages, they should have had an opportunity to establish actual damages in excess of that sum. The Dukarts emphasize that, by the terms of the liquidated damages clause, liquidated damages would be awarded "without prejudice to other rights and legal remedies." Thus, they argue, they should be permitted to establish actual damages beyond the liquidated damages amount. We disagree.

■ Actual damages and liquidated damages "are not alternative remedies ... but are alternative forms of the same remedy—damages." Ray Farmers Union Elevator Co. v. Weyrauch, 238 N.W.2d 47, 49 (N.D. 1975). Thus, by seeking actual damages in excess of the liquidated damages sum, the Dukarts are not seeking alternative remedies, but alternative forms of the same remedy. Id. By contracting for liquidated damages, the parties have stipulated to the amount of damages recoverable by the Dukarts in the event of breach by Fisher. Regardless of the amount of actual damages incurred, the district court properly determined that the parties are bound by their stipulation. Id.; Bottineau Public Sch. Dist. No. 1 v. Zimmer, 231 N.W.2d 178 (N.D. 1975); Costello v. Johnson, 265 Minn. 204, 121 N.W.2d 70 (1963).

The judgment of the district court is affirmed.

SANDSTROM, NEUMANN and LEVINE, JJ., concur.

MESCHKE, J., concurs in the result.