Filed 11/19/07 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2007 ND 181

Hendricks Property Management Corp., Plaintiff and Appellee

v.

Birchwood Properties Limited 

Partnership, Breezy Shores, LLC, 

Bramley Properties Limited 

Partnership, Marcy’s, LLC, and 

O’Grady, LLC, Defendants and Appellants

No. 20070028

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Georgia Dawson, Judge.

AFFIRMED.

Opinion of the Court by Maring, Justice.

Ronald H. McLean (argued) and Jane L. Dynes (on brief), Serkland Law Firm, P.O. Box 6017, Fargo, N.D. 58108-6017, for plaintiff and appellee.

Michael D. McNair, McNair, Larson & Carlson, Ltd., P.O. Box 2189, Fargo, N.D. 58108-2189, for defendants and appellants.

Hendricks Property Management v. Birchwood Properties

No. 20070028

Maring, Justice.

[¶1] Birchwood Properties Limited Partnership, Breezy Shores, LLC, Bramley Properties Limited Partnership, Marcy’s, LLC, and O’Grady, LLC, (collectively referred to as “defendants”) appeal from a judgment entered after the district court found they had each breached property management agreements with Hendricks Property Management Corporation and awarded Hendricks Property Management $298,643 in liquidated damages.  We conclude the district court did not err in deciding the defendants breached the property management agreements and the court’s findings of fact on the foundational requirements for a valid liquidated damages clause are not clearly erroneous.  We affirm the judgment.

I

[¶2] In the late 1990s, Melvin Hendricks approached Scott Fridlund and Wynn Juran to sell his government subsidized housing units.  Melvin Hendricks’ housing units had been managed by Hendricks Property Management, a management company owned by his son, Chuck Hendricks.  Fridlund and Juran eventually purchased Melvin Hendricks’ housing units in 1999, which they subsequently operated as Birchwood Properties.

[¶3] Birchwood Properties executed a property management agreement with Hendricks Property Management, which provided for a three-year term beginning on May 7, 1999, and ending on April 30, 2002, with an automatic year-to-year renewal unless either party terminated the agreement “with or without cause, at the end of the initial term or of any following term year upon the giving of 60 days’ written notice prior to the end of said initial term or following term year.”  The management agreement also included language authorizing termination for cause:

Thirty (30) days after the receipt of notice by either party to the other specifying in detail a material breach of this Agreement, if such breach has not been cured within said thirty (30) day period; or if such breach is of a nature that it cannot be cured within said thirty (30) day period but can be cured within a reasonable time thereafter, if efforts to cure such breach have not commenced or/and such efforts are not proceeding and being continued diligently both during and after such thirty (30) day period prior to the breach being cured.  HOWEVER, the breach of any obligation of either party hereunder to pay any monies to the other party under the terms of this Agreement shall be deemed to be curable within thirty (30) days.

The management agreement further provided for “termination compensation” if Birchwood Properties terminated the agreement before the end of the initial term or any subsequent term year, which required Birchwood Properties to pay Hendricks Property Management “as liquidated damages an amount equal to the management fee . . . for the calendar month immediately preceding the month in which the notice of termination is given . . . multiplied by the number of months and/or portions thereof remaining from the termination date until the end of the initial term or term year in which the termination occurred.”

[¶4] In 2001, Fridlund and Juran purchased three additional groups of government subsidized housing units from other individuals, which they operated under separate entities as Bramley, Marcy’s, and O’Grady.  Those three entities executed separate property management agreements with Hendricks Property Management to manage the respective properties, and the three management agreements each set a beginning date of July 1, 2001, and an ending date of June 30, 2004.  Each of those three management agreements also included language identical to the Birchwood Properties’ agreement for termination and for liquidated damages.

[¶5] In April 2002, the initial three-year term for the Birchwood Properties’ management agreement was about to expire without either party providing a 60-day notice of termination.  As a result, the language authorizing an automatic year-to-year renewal was triggered, which resulted in a scheduled expiration date of April 30, 2003.  At an April 2002, meeting, Chuck Hendricks provided Fridlund and Juran with a copy of a proposed new management agreement.  In a May 10, 2002, letter to Chuck Hendricks, Fridlund and Juran, on behalf of Birchwood Properties, “decided to accept an automatic renewal [of the management agreement] for the term of one year” with an expiration date of April 30, 2003, and they requested that before that renewal date, they receive a copy of the new contract for review “NO LATER THAN January 31, 2003” with any changes in the current contract “underlined in red” or “blacklined.” According to Chuck Hendricks, he called Fridlund on January 16, 2003, with a question, and Hendricks left a message that he thought they were “just auto renewing” and he received “no reply by 1/31/03.”

[¶6] By letter dated April 23, 2003, Birchwood Properties informed Hendricks Property Management that it had “elected to terminate the management agreement that will expire on June 30, 2003, as agreed to by the parties at the time of the one (1) year renewal term.”  Hendricks Property Management thereafter informed Birchwood Properties that the one-year automatic renewal of the management agreement extended that agreement from April 30, 2003, through April 30, 2004.  Fridlund and Juran nevertheless began managing Birchwood Properties on July 1, 2003.

[¶7] Meanwhile, by letters dated April 24, 2003, Bramley, Marcy’s, and O’Grady informed Hendricks Property Management that they were terminating their respective property management agreements at the end of the June 30, 2004, three-year term.  In those letters, Bramley, Marcy’s, and O’Grady also informed Hendricks Property Management that its failure to “timely deliver reports” constituted a material breach of the management agreements and that the respective letters constituted a 30-day notice to cure the deficiency.  By letter dated May 8, 2003, Hendricks Property Management stated it had delivered various reports to the three entities on April 30, 2003, to cure any alleged deficiency.  By letter dated August 6, 2003, the defendants gave Hendricks Property Management notice of alleged breaches of the management agreements involving all four properties.  Fridlund and Juran assumed management responsibilities for the Bramley, Marcy’s, and O’Grady properties on September 1, 2003.

[¶8] Hendricks Property Management sued the defendants for breach of contract, alleging the defendants breached the termination provisions of the agreements by failing to provide a 60-day notice of termination for the Birchwood Properties’ contract and by failing to allow Hendricks Property Management a 30-day period to cure any default in the other three contracts.  Hendricks Property Management sought damages under the provision in each agreement which authorized liquidated damages.  The district court decided the defendants’ termination of the four property management agreements constituted a breach of contract.  The court awarded Hendricks Property Management $298,643 in liquidated damages, finding the foundational requirements for a valid liquidated damages clause had been established and the liquidated damage clause in each management agreement was enforceable.

II

[¶9] We initially consider the defendants’ claim that they did not breach the property management agreements.  They contend the district court clearly erred in failing to decide their agency argument, because agency law governed the parties’ relationship and there was uncontroverted evidence the defendants’ termination of the property management agreements was caused by Chuck Hendricks’ prior breach of his agency and fiduciary duties.  The defendants contend that in May 2002, their agent, Chuck Hendricks, was instructed in writing to present a new property management agreement for Birchwood Properties’ review before January 31, 2003, for the upcoming renewal on April 30, 2003.  They claim their breach of the 60-day notice requirement in Birchwood Properties’ management agreement was caused by Hendricks’ failure to follow their instructions and prepare a new management agreement.  They assert if Hendricks had presented the requested management agreement to them by January 31, 2003, they could have terminated the contract lawfully.  They argue Chuck Hendricks’ failure allowed Hendricks Property Management  to retain the benefit of the 60-day notice requirement for terminating the management agreement, which is strictly prohibited by the law of agency and trust.  The defendants also claim that rationale “serves the same purpose” for Hendricks Property Management’s contracts with Bramley, Marcy’s, and O’Grady, and a breach of one agreement is a breach of all the agreements.

[¶10] “Agency is the relationship which results where one person, called the principal, authorizes another, called the agent, to act for him in dealing with third persons.”  N.D.C.C. § 3-01-01.  Agency involves both a contractual relationship and and a fiduciary relationship.  
Burlington Northern & Sante Fe Ry. Co. v. Burlington Res. Oil & Gas Co.
, 1999 ND 39, ¶ 15, 590 N.W.2d 433.  The interpretation of an agent’s authority is governed by rules for construing contracts, except to the extent the fiduciary relationship requires a special rule.  
Id.
 at ¶¶ 15, 27.  
See
 Restatement of the Law 3d 
Agency
 § 807, comment (b) (2006); Warren A. Seavey, 
Handbook of the Law of Agency
 §§ 20-21 (1964).

[¶11] In 
Burlington Northern
, 1999 ND 39, ¶ 3, 590 N.W.2d 433, this Court considered an issue about an agent’s alleged self-dealing with its principal’s oil and gas rights, and the scope of the principal’s authorization for the agent to deal with those rights for “its own account.”  We said the terms of the parties’ management agreement generally governed the agent’s duties to the principal, but an agency agreement is also a special kind of contract that must be interpreted in light of the fiduciary relationship between the agent and the principal.  
Id.
 at ¶¶ 15-16.  We recognized, however, that an agent’s duties to the principal were governed by the rules of contract interpretation, and by contract, the parties may “otherwise agree” to alter the normal rules of their relationship.  
Id.
 at ¶ 15.  In 
Burlington Northern
, we construed the parties’ agreement to be a general authorization for self-dealing, which did not specifically eliminate the agent’s fiduciary duties to the principal.  
Id.
 at ¶¶ 22-26.

[¶12] 
Burlington Northern
 involved the interpretation of an agent’s authority under a management agreement that, in the absence of language specifically eliminating the agent’s fiduciary duties, this Court construed to impose certain fiduciary duties on the agent.  This case involves the interpretation of language for terminating a management agreement and the parties’ obligations under those provisions.  Under N.D.C.C. § 9-07-02, the language of a contract governs its interpretation if the language is clear and explicit and does not involve an absurdity.  A contract is interpreted to give effect to the mutual intentions of the parties at the time of contracting.  N.D.C.C. § 9-07-03.  When a contract is reduced to writing, the parties’ intentions must be ascertained from the writing alone, if possible.  N.D.C.C. § 9-07-

04.  A contract is interpreted as a whole to give effect to every provision if reasonably practicable and each clause is used to help interpret other clauses.  N.D.C.C. § 9-07-

06.  A contract is interpreted in its ordinary and popular sense.  N.D.C.C. § 9-07-09.

[¶13] In this case, the parties’ property management agreements explicitly provided a procedure for termination, with an automatic renewal provision and provisions for termination for cause with an opportunity to cure.  The agreements also specified that “[n]o change to the Agreement shall be valid unless made by supplemental written agreement executed and approved by Owner and Agent.  Except as otherwise provided herein, any and all amendments, additions, or deletions to this Agreement shall be null and void unless approved by Owner and Agent in writing.”  Although agents have fiduciary duties to their principals, the issues in this case are governed by contract law, the plain and ordinary meaning of the language of the property management agreements regarding termination, and the requirement that all amendments to the agreements shall be void unless approved by the parties in writing.

[¶14] Here, the district court found the defendants had breached the termination language of all four property management agreements:

27. In April of 2002, the parties met regarding the annual review of operations.  Chuck Hendricks proposed a new two-year contract for the operation of the Birchwood properties.  The agreement was never agreed to nor executed.

28. Fridlund and Juran responded to the proposal negatively and were critical of Chuck Hendricks claiming that the changes of compensation in Section 17.1 and Section 17.6 exemplified a kind of “catch me if you can attitude.”  They rejected the proposed two-year contract.  They wrote in response:

As per our reading of the contract, “extended for one year” means it will expire on April 30, 2003.
  Prior to that renewal date we request a copy of the new contract be presented for our review NO LATER THAN January 31, 2003.  We further request that any changes you will have made to our current contract be underlined in red, or if printed from someplace other than a computer, that it be blacklined.  (Emphasis added)

. . . .

30. In January, 2003, Chuck Hendricks left messages with Fridlund regarding the Birchwood Agreement but his telephone messages were unreturned.  There was no effort by Juran and Fridlund to contact Chuck Hendricks.

31. The Birchwood contract, pursuant to its automatic one-year extension, was set to terminate on April 30, 2003.  Any notice to terminate the contract and stop the automatic renewal pursuant to Section 1.3 had to be sent out sixty (60) days prior to the end of the term.  No notice of termination was sent out prior to March 1, 2003.

. . . .

39. . . . The termination date for the Birchwood Management Agreement was April 30, 2002.  The contract automatically renewed unless there was sixty (60) days’ written notice prior to the following year term given of a notice to terminate.  No sixty (60) day prior notice to April 30, 2002 was ever prepared and sent to [Hendricks Property Management]. There is no credible evidence to support any agreed-

upon amendment to the termination date that it was amended to June 30, 2003.

40.  The defendants breached the O’Grady, Marcy’s and Bramley contracts.  Pursuant to . . . the three Management Agreements, the defendants could have terminated [Hendricks Property Management] for cause upon thirty (30) day notice of material breach with time for cure. . . .  Prior to the expiration of the thirty (30) day extension period, the defendants wrongfully announced that they were taking over the properties as of September 1, 2003.  The taking over of the three properties on September 1, 2003 was a breach of the agreements.

41.  Even if the thirty (30) days’ notice to cure had been given, the defendants failed to meet their burden of proof that there was cause under the contract to terminate the plaintiffs.

[¶15] A district court’s findings of fact and conclusions of law must be stated with sufficient specificity to provide this Court with a clear understanding of the court’s decision, and we have said that findings are adequate if we are able to understand the factual basis for the court’s determination.  
Gross v. Sta-Rite Indus., Inc.
, 322 N.W.2d 679, 682 (N.D. 1982).  Here, we are able to understand the basis for the district court’s decision.  The court decided there was no credible evidence to support an amended termination date for the Birchwood Properties’ agreement, and this record does not reflect that the parties mutually agreed in writing to alter the termination date or the procedure for terminating the management agreements.  Moreover, there is evidence in this record that Juran and Fridlund knew the expiration dates of the Birchwood Properties’ agreement, as evidenced by their May 2002, letter requesting that a copy of a new contract be presented for review no later than January 31, 2003, and stating the Birchwood Properties’ contract would expire on April 30, 2003.  An agent must disclose to the principal those facts that the agent knows will affect the principal’s judgment unless the principal knows those facts.  
See
 
Burlington Northern
, 1999 ND 39, ¶¶ 19-20, 590 N.W.2d 433.  We are able to understand the factual basis for the district court’s decision, and we conclude the court did not err in deciding the defendants breached the language of the termination provisions of the four property management agreements.

III

[¶16] The defendants argue the district court clearly erred in finding Hendricks Property Management proved the foundational facts necessary for a valid liquidated damages provision.

[¶17] Section 9-08-03, N.D.C.C., provides that “[p]enalties imposed by contract for any nonperformance thereof are void.”  Under N.D.C.C. § 9-08-04, a contractual provision fixing liquidated damages is void “except that the parties may agree therein upon an amount presumed to be the damage sustained by a breach in cases in which  it would be impracticable or extremely difficult to fix the actual damage.”  A party seeking to enforce a contractual clause for liquidated damages has the burden of proof under N.D.C.C. § 9-08-04.  
Circle B Enterprises, Inc. v. Steinke
, 1998 ND 164, ¶ 11, 584 N.W.2d 97; 
Fisher v. Schmeling
, 520 N.W.2d 820, 822 (N.D. 1994).  This Court has construed N.D.C.C. § 9-08-04 to follow the modern trend to uphold liquidated damages clauses in cases that do not involve adhesion contracts.  
Steinke
, at ¶ 12; 
Fisher
, at 822-23; 
City of Fargo v. Case Dev. Co.
, 401 N.W.2d 529, 533 n.3 (N.D. 1987).

[¶18] Under N.D.C.C. § 9-08-04 and case law interpreting that statute, this Court has established three foundational facts for the inquiry about whether a contractual provision is a valid liquidated damages clause or a void penalty: (1) the damages stemming from a breach are impractical or extremely difficult to estimate when the contract was entered; (2) the parties reasonably endeavored to fix their damages; and (3) the amount stipulated bears a reasonable relation to the probable damages and is not disproportionate to any damages reasonably anticipated.  
Steinke
, 1998 ND 164, ¶ 11, 584 N.W.2d 97; 
Fisher
, 520 N.W.2d at 822; 
Coldwell Banker-First Realty, Inc. v. Meide & Son, Inc.
, 422 N.W.2d 375, 378 (N.D. 1988); 
Hagan v. Havnvik
, 421 N.W.2d 56, 59-60 (N.D. 1988); 
City of Fargo
, 401 N.W.2d at 531; 
Eddy v. Lee
, 312 N.W.2d 326, 330 (N.D. 1981).

[¶19] The foundational requirements in N.D.C.C. § 9-08-04 are not mutually exclusive.  
Steinke
, 1998 ND 164, ¶ 12, 584 N.W.2d 97; 
Fisher
, 520 N.W.2d at 822.  In 
Fisher
, at 822-23, we said the difficulty of estimating damages has greater importance where there has been little negotiation for the liquidated damages clause, and less importance where there has been bona fide reasonable negotiations for liquidated damages.  We recognized that although N.D.C.C. § 9-08-04 has not been amended to clearly reflect the modern trend to uphold liquidated damage provisions, we nevertheless construed our statute to be receptive to the interests of those who, in good faith, endeavor to avoid the traditional recourse to the court system by utilizing a liquidated damages provision.  
Fisher
, at 822-23.  In 
City of Fargo
, 401 N.W.2d at 533, we explained the reasonable endeavor requirement to fix damages does not require face-to-face negotiations about the amount of liquidated damages as a prerequisite to enforcing the clause.

[¶20] The foundational requirements for a valid liquidated damages clause under N.D.C.C. § 9-08-04 are questions of fact which are reviewed under the clearly erroneous standard in N.D.R.Civ.P. 52(a).  
Steinke
, 1998 ND 164, ¶ 11, 584 N.W.2d 97; 
Fisher
, 520 N.W.2d at 822; 
Coldwell Banker
, 422 N.W.2d at 378; 
City of Fargo
, 401 N.W.2d at 531; 
Eddy
, 312 N.W.2d at 331.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or, if there is some evidence to support the finding, on the entire record we are left with a definite and firm conviction a mistake has been made.  
Burlington Northern
, 1999 ND 39, ¶ 10, 590 N.W.2d 433; 
Coldwell-Banker
, at 378; 
City of Fargo
, at 531.

[¶21] The defendants argue the uncontested evidence shows there were no negotiations for the written property management agreements or the liquidated damages provisions, and, therefore, the damages from the breach were not impractical or extremely difficult to ascertain when the agreements were executed, the parties did not reasonably try to fix the damages, and the amount of liquidated damages does not bear a reasonable relation to probable damages and is disproportionate to any damages reasonably anticipated.  Relying on 
Industry Fin. Corp. v. Redman
, 383 N.W.2d 847 (N.D. 1986), they claim the amount of the liquidated damages awarded by the district court eliminated Hendricks Property Management’s duty to mitigate damages.  They also claim the testimony of Hendricks Property Management’s expert, Dr. Leonard Sliwoski, does not satisfy the foundational requirements for a valid liquidated damages clause.

[¶22] The defendants’ reliance on 
Redman
 is misplaced.  In 
Redman
, 383 N.W.2d at 848-49, we construed two provisions in leases together to render the leases reasonable and lawful.  One provision authorized the calculation of damages on default in language that required mitigation of damages and the other provision said the lease was irrevocable for its full term without a rent abatement.  
Id.
 at 848.  Citing N.D.C.C. §§ 9-08-03 and 9-08-04, we said the provision for unabated rent, standing alone, imposed no obligation to mitigate losses and permitted double recovery, which by itself would be void and unenforceable as a penalty.  
Redman
, at 848.  We construed the two provisions together to authorize mitigation of damages.  
Id.
 at 848-

49.  
Redman
 involved the interpretation of two provisions in leases and did not involve an analysis of the foundational requirements for a valid liquidated damages clause.  It does not control the analysis of the liquidated damages clauses in this case.  [¶23] Here, although the parties may not have had face-to-face negotiations about the liquidated damages clauses, we have said face-to-face negotiations are not necessary to uphold a liquidated damages clause.  
City of Fargo
, 401 N.W.2d at 533.  In 
City of Fargo
, we cited California precedent interpreting a statute similar to N.D.C.C. § 9-08-04, which held that, in a case involving a liquidated damages clause in a form contract, the “‘reasonable endeavor’ requirement was satisfied by evidence that ‘the parties agreed to the liquidated provisions, and there is no evidence that they were not fully aware of circumstances making it desirable that liquidated damages be provided for.’”  401 N.W.2d at 533 (quoting 
Better Foods Markets, Inc. v. American Dist. Tel. Co.
, 253 P.2d 10, 15 (Cal. 1953)).  
See also
 
Utility Consumers’ Action Network v. AT & T Broadband
, 37 Cal.Rptr.3d 827, 843-44 (Cal. Ct. App. 2006) (citing 
City of Fargo
 and holding reasonable endeavor does not require face-to-face negotiations in form contract).  We also cited another California precedent in which an individual claimed he had not read the entire agreement and the liquidated damages clause was not pointed out to him or discussed at anytime:

“[the individual], as president of at least one corporation engaged in commercial trade, must be presumed to have executed the agreement with knowledge that he was bound by its terms and it was incumbent upon him to review and acquire at least a working knowledge of the advantages and limitations of the contract.  He cannot now be heard to refute its effect or to avoid the consequences by disclaiming knowledge where he had the opportunity to discuss and negotiate terms.”

City of Fargo
, at 533 (quoting 
Zurich Ins. Co. v. Kings Indus., Inc.
, 63 Cal.Rptr. 585, 588-89 (1967)).

[¶24] In 
City of Fargo
, 401 N.W.2d 533-34, we upheld a liquidated damages provision, stating the entity bound by the agreement consisted of experienced business people who had an opportunity to review the agreement and make suggested changes.  We rejected the contention there must be actual negotiations or discussions about the amount designated as liquidated damages, because it ignored commercial realities.  
Id.
 at 534.  We said that, in the normal course of conducting business, many agreements are signed without the parties fully negotiating each individual term of the contract, and we declined to invalidate a liquidated damages clause in a contract negotiated by parties bargaining at arm’s length where each party had an equal opportunity to dictate the contract’s terms.  
Id.

[¶25] Here, the district court found Fridlund and Juran had multiple attorneys available to them when they purchased the properties, and they were both experienced and knowledgeable business people and knew or should have known the content of the management contracts they signed. The court found that Hendricks Property Management presented the Birchwood Properties’ management agreement to Fridlund and Juran for their review and execution, and they had the opportunity to review the agreement.  There is evidence that Fridlund and Juran first executed the Birchwood Properties’ agreement in January 1999 and also initialed the same agreement in April 1999, before it took effect on May 7, 1999.  The court found Fridlund and Juran thereafter entered into three new agreements for the subsequently purchased properties, which had language identical to the first agreement except for the rate of compensation for Hendricks Property Management’s services.  The court found two of those subsequent agreements included a “bonus attachment” which was negotiated between the parties.  The court found Hendricks Property Management had to expand its operation to take on those additional properties.  The court also made specific findings on the foundational facts:

a. The court finds that at the time of contracting the type of damages that [Hendricks Property Management] would incur would be difficult to determine. [Hendricks Property Management] is a small company with fixed overhead.  It works in a specialized industry.  The revenues under these contracts were a substantial portion of its income.

b. The parties executed the identical liquidated damage clause four times.  This establishes that the parties did reasonably attempt to fix their damages.

c. A reasonable relationship exists between the damages stipulated to and the amount that would have been reasonably anticipated under the circumstances. The amount of revenue lost by these contracts was substantial to [Hendricks Property Management], a small business in a specialized field. It had specialized trained staff who were cross-trained. From a viewpoint of the time of contracting, the damages stipulated to reasonably anticipate those that would be incurred.

[¶26] Under the circumstances of this case, where experienced parties and their attorneys had multiple opportunities to examine the contracts and discuss their terms, including the liquidated damages clauses, we conclude the evidence supports the district court’s finding that the liquidated damages clauses were the result of reasonable endeavor by the parties to fix compensation.  We are not persuaded the district court erred in relying on Dr. Sliwoski’s testimony about liquidated damages provisions in property management agreements to provide context for property management agreements and to help understand the reason for liquidated damages in what the district court termed a “specialized field.”  There is evidence in this record that supports the district court’s findings, and we are not left with a definite and firm conviction the court made a mistake in finding the foundational facts for valid liquidated damages clauses.  We conclude the district court’s findings on the foundational facts for these liquidated damages provisions are not clearly erroneous.

IV

[¶27] We affirm the judgment.

[¶28] Mary Muehlen Maring

Daniel J. Crothers

Carol Ronning Kapsner

John C. McClintock, Jr., D.J.

Gerald W. VandeWalle, C.J.

[¶29] The Honorable John C. McClintock, Jr., D.J., sitting in place of Sandstrom, J., disqualified.